986 A.2d 808

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Ronald Lee WEISS, Appellee.**

Supreme Court of Pennsylvania.

Submitted March 12, 2008.

Decided Dec. 29, 2009.

574

Christopher D. Carusone, PA Office of Attorney General, Philadelphia, Amy Zapp, Harrisburg, for Commonwealth of Pennsylvania.

James Joseph McHugh, Media, for Ronald Lee Weiss.

BEFORE: CASTILLE (CJ), SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## OPINION

Justice McCAFFERY.

In this appeal we decide whether the award of a new trial to Ronald Lee Weiss ("Appellee") by the Indiana County Court of Common Pleas ("PCRA court") is supported by the record and is free of legal error. Specifically, we determine whether the PCRA court properly granted Appellee a new trial on the basis that the prosecutor withheld information that could have been used to impeach the credibility of two Commonwealth witnesses, in violation of *Brady v. Maryland*.[1] Additionally, we determine whether a conflict of interest claim raised in Appellee's PCRA petition has been waived because Appellee failed to raise the issue on direct appeal. Upon careful review, we conclude the conflict of interest issue has been waived, and that the court's conclusions with respect to the *Brady* issue lack sufficient factual and legal analysis. Accordingly, we vacate the order of the PCRA court, and remand for preparation of an opinion containing a more searching analysis not inconsistent with this opinion.

The pertinent facts, as gleaned from the record, reveal that Barbara Bruzda, a sixteen-year-old girl, was last seen alive on October 23, 1978. Her badly decomposed body was discovered wrapped in a quilt lying in a remote roadside ditch on March 20, 1979. On February 19, 1997, Appellee was arrested and charged with Ms. Bruzda's murder.

The trial court appointed Public Defender Donald Marsh, Esquire, Assistant Public Defender Robert S. Dougherty, Esquire, and Donald L. McKee, Esquire, to represent Appellee. These attorneys subsequently filed a motion for the appointment of new counsel, which averred, in pertinent part:

1. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)

4. [Appellee] requests that your Honorable Court appoint new counsel to replace Public Defender Donald R. Marsh, in that Public Defender Donald R. Marsh has **formerly represented** a tentative Commonwealth witness, Kermeth Wright, in his capacity of Public Defender.

5. [Appellee] requests that your Honorable Court appoint counsel to replace Assistant Public Defender Robert S. Dougherty, in that he is under the supervision of Chief Public Defender Marsh and therefor[e] believes a conflict of interest exists.

6. [Appellee] requests that your Honorable Court appoint counsel to replace Donald L. McKee, Esquire, as Attorney McKee is the law partner of Robert S. Dougherty; and because of Attorney Dougherty's association with the Public Defender's Office, Mr. McKee has a conflict of interest.

Motion for Appointment of Counsel, filed 4/4/97 (emphasis added). The trial court denied the motion on April 4, 1997, without a hearing.

During pre-trial discovery, the Commonwealth identified the existence of jailhouse informants, Kermeth Wright and Samuel Tribuiani, as potential witnesses. The Commonwealth averred that there were no "deals" with these witnesses, and stated on the record that the witnesses had not been promised anything in exchange for their cooperation and anticipated testimony. The Commonwealth informed the trial court and Appellee's counsel that it did intend to take reasonable steps to protect the safety of the witnesses, and would also accurately report the nature and extent of the witnesses' cooperation if asked by the witnesses' confining authorities. At no time during the discovery process prior to trial, however, did the Commonwealth provide Appellee's counsel with copies of letters it had written to the Department of Corrections and Parole Board, among others, asking these authorities to consider the witnesses' cooperation when deciding whether to grant them parole or other early release.

At trial, the Commonwealth presented the testimony of twenty-six witnesses. Sharon Pearson, Appellee's common-

law wife at the time of Ms. Bruzda's disappearance, testified that on the morning of October 24, 1978, she cleaned a large quantity of smeared and spattered blood from the back seat of the vehicle Appellee had been driving the night before and she noticed, at that time, that a quilt was missing from the back seat of the vehicle. She testified that when she asked Appellee where all the blood had come from, he showed her a small abrasion on his knuckle. She further testified that the quilt in which Ms. Bruzda's body was found was the quilt missing from the back seat of the vehicle. A number of witnesses testified that they saw Appellee with Ms. Bruzda on the evening of October 23, 1978. It was established that Ms. Bruzda had been killed by repeated blows to the skull with a blunt object. Evidence was presented that Appellee had borrowed a tire iron from a friend on the evening of October 23, 1978, and that he never returned it. Kermeth Wright testified that during the time he and Appellee were incarcerated in the same facility, Appellee admitted he murdered Ms. Bruzda. Samuel Tribuiani testified that during the time he and Appellee were incarcerated in the same facility, Appellee admitted his involvement with another person in the bludgeoning murder of a young girl. Both Wright and Tribuiani testified at trial that they had received no special treatment in exchange for their testimony.

Appellee testified in his own defense. His testimony revealed he had been questioned by police regarding the murder of Ms. Bruzda shortly after her body was found. He originally told police that on the evening of October 23, 1978, he gave Ms. Bruzda and an unknown hitchhiker a ride, and never saw either of them again after he dropped them off together. At trial, he admitted this version of events was a lie. He testified that, in actuality, Ms. Bruzda had been a passenger in his car on a remote road when two vehicles forced his vehicle to stop. He testified that he had been dragged from the vehicle and beaten about the head with a club by Sharon Pearson's brothers, who left him unconscious in a ditch by the side of the road. When he regained consciousness, Ms. Bruzda was gone. Appellee explained he had never previously revealed the truth

because the morning after the beating, the brothers accosted him in the parking lot of a mall and told him that if he revealed what had happened the previous night, they would kill him and his family.

A jury convicted Appellee of first-degree murder, and he was sentenced to death. Trial counsel continued to represent Appellee on direct appeal. On direct appeal from the judgment of sentence, Appellee did not challenge the trial court's disposition of his pre-trial petition to appoint new counsel. This Court affirmed the judgment of sentence. *See Commonwealth v. Weiss,* 565 Pa. 504, 776 A.2d 958 (2001).

Following this Court's disposition of his direct appeal, Appellee sought post-conviction relief. Appellee was represented by counsel from the Defender Association of Philadelphia during post-conviction proceedings, and on May 15, 2003, a counseled PCRA petition was filed, 190 pages in length, raising 19 separate claims of entitlement to relief. The first claim alleged that trial counsel had labored under conflicts of interest that had adversely affected their representation of Appellee at trial. The second claim alleged that the Commonwealth had violated its obligations under *Brady.* The petition also contained numerous claims of counsel's ineffectiveness during the guilt and penalty phases of Appellee's trial.

A hearing on the petition was conducted on March 29 and March 30, 2007. With respect to the *Brady* issue, the trial prosecutor testified that "in hindsight," he was unsure whether the testimony of the jailhouse informants was essential to the case against Appellee. He testified that although he had wanted the jury to understand that these witnesses had "agreed to testify without being promised anything," he was now unsure whether the credibility of Wright and Tribuiani had been essential to the verdict. Notes of Testimony ("N.T.") PCRA Hearing, 3/30/07, at 67. The prosecutor's testimony at the PCRA hearing concluded as follows:

> THE COURT: Let me ask you one question. I want to be able to sleep tonight, okay?

582

[THE COURT]: The two witnesses in this case that testified against [Appellee], at one point you were asked did you feel whether or not their credibility was an issue and important to you and you said no. You didn't mean that, did you?

[PROSECUTOR:] Judge, when I said no, I tried to explain this afterwards when I said no. I mean today as I look back on it, I'm not sure how much their testimony mattered. At the time it mattered a great deal to me that their credibility be understood.

[THE COURT]: Well, I can't rest on that. You've got to be kidding. These two people took an alleged confession from [Appellee] and they take the stand and you don't think their credibility is important?

[PROSECUTOR:] Well, I did at the time Judge, but—can I explain, I mean?

[THE COURT]: Well, yeah. I should just say that I would find it incredible that you would say that.

[PROSECUTOR:] This trial is ten years ago and as I look back on it and I think about the things that were the most critical for the jury, it's not Sam [Tribuiani] or Kerm Wright. When I think about what's most critical it was Sharon Pearson's testimony about the blood in the car and the quilt, and I think [Appellee's] own testimony was so incredible that I guess what I'm saying, and what was remarkable to me, Judge, when I went back over and looked at my closing argument, I don't mention Sam Wright—or Sam Tribuiani [and] Kerm Wright. I don't even mention them. That makes me think that I just, at the time, as I was in it, yes, I wanted to establish their credibility, but looking back on it now I don't know honestly [or] see how important they were in the big scheme of things.

[THE COURT:] Well, I'm going to be blunt and say that I find that truly preposterous, truly preposterous that you would not think that their credibility was important. Maybe I'm missing something, but for the time being we'll etch that in stone on the record incredibly [sic]. I just can't

understand that. Okay, nothing else of this witness, you can step down. Okay.

*Id.* at 116–17.

By Order and Opinion entered July 31, 2007, the PCRA court determined that the Commonwealth had violated its obligations under *Brady* by failing to disclose certain impeachment evidence relevant to the credibility of Tribuiani and Wright, and awarded Appellee a new trial on that basis. The PCRA court determined the trial court had erred when it failed to conduct a hearing on the motion for the appointment of new counsel, and concluded that trial counsel had had an actual conflict of interest in representing Appellee at trial because counsel simultaneously represented Kermeth Wright in another matter.

The Commonwealth appealed and filed a Pa.R.A.P.1925(b) statement as directed. Therein, the Commonwealth claimed, among other things, that the PCRA court erred by not concluding the conflict of interest issue had been waived. On October 31, 2007, the PCRA court issued findings of fact and an opinion *sur* appeal. The PCRA court found as fact that "the crux of the Commonwealth's case at the jury trial was the testimony of jailhouse informants, Sam Tribuiani and Kerm Wright." Findings of Fact, dated 10/31/07, at 1. The PCRA court opined that the undisclosed *Brady* material would have aided defense counsel in attacking the credibility of these witnesses. Regarding the petition for appointment of counsel and conflict of interest issue, the PCRA court found as fact that the "Public Defender's office represented Kerm Wright at the time of trial." *Id.* In its accompanying Opinion, it adopted Appellee's "facts and law relating to the conflict of interest question" and opined that Appellee "should have been given the opportunity to make a record in this regard." PCRA Court Opinion, dated 10/31/07, at 2.

We first address the Commonwealth's claim that the PCRA court erred in granting a new trial due to an asserted *Brady* violation. We review the PCRA court's rulings to determine whether they have support in the record and are

free of legal error. *Commonwealth v. Marshall,* 596 Pa. 587, 947 A.2d 714, 719 (2008); *Commonwealth v. Moore,* 569 Pa. 508, 805 A.2d 1212, 1214 n. 1 (2002). We summarized the law of *Brady* in *Commonwealth v. Strong,* 563 Pa. 455, 761 A.2d 1167 (2000):

> In *Brady,* the United States Supreme Court declared that due process is offended when the prosecution withholds evidence favorable to the accused.... The *Brady* court established the obligation of the prosecution to respond affirmatively to a request for production of exculpatory evidence with all evidence material to the guilt or punishment of the accused. Where evidence material to the guilt or punishment of the accused is withheld, irrespective of the good or bad faith of the prosecutor, a violation of due process has occurred.

*Id.* at 1171 (citations and footnote omitted).

In *United States v. Bagley,* 473 U.S. 667, 677, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Supreme Court concluded that "impeachment evidence ... as well as exculpatory evidence, falls within the *Brady* rule," and held that, regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 105 S.Ct. 3375. *See Strong, supra* at 1171 ("As *Brady* and its progeny dictate, when the failure of the prosecution to produce material evidence raises a reasonable probability that the result of the trial would have been different if the evidence had been produced, due process has been violated and a new trial is warranted." (*citing Bagley* )); *see also Commonwealth v. Moose,* 529 Pa. 218, 602 A.2d 1265, 1272 (1992) ("When the reliability of a witness may be determinative of guilt or innocence, non-disclosure of evidence affecting that witness's credibility runs afoul of *Brady's* disclosure requirement.").

In determining whether a reasonable probability of a different outcome has been demonstrated, "[t]he question is

not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). A "reasonable probability" of a different result is shown when the government's suppression of evidence "undermines confidence in the outcome of the trial." *Bagley, supra* at 678, 105 S.Ct. 3375. The United States Supreme Court has made clear that *Bagley's* materiality standard is not a sufficiency of the evidence test. *Kyles, supra* at 434, 115 S.Ct. 1555. A *Brady* violation is established "by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles, supra* at 435, 115 S.Ct. 1555. Importantly, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014, 1019 (2003) (emphasis added). "[I]n order to be entitled to a new trial for failure to disclose evidence affecting a witness'[s] credibility, the defendant must demonstrate that the reliability of the witness may well be determinative of his guilt or innocence." *Commonwealth v. Johnson,* 556 Pa. 216, 727 A.2d 1089, 1094 (1999). In assessing the significance of the evidence withheld, a reviewing court must bear in mind that not every item of the prosecution's case would necessarily have been directly undercut had the *Brady* evidence been disclosed. *Kyles, supra* at 451, 115 S.Ct. 1555.

▆▆▆ Here, the PCRA court did not address or make any explicit determination as to whether the prosecution's failure to disclose information relating to Tribuiani and Wright's credibility undermined confidence in the outcome of Appellee's trial, such as would have created a reasonable probability of a different result. Instead, a fair reading of the PCRA court's cursory opinions in this matter reflects that the court concluded a new trial was warranted apparently simply because the

Commonwealth failed to disclose alleged impeachment evidence that would have been helpful to the defense.[2]

The trial transcript shows that the Commonwealth presented the testimony of twenty-six witnesses, including Tribuiani and Wright. The testimony of numerous witnesses other than Wright and Tribuiani, including the testimony of Appellee, was clearly very damaging to the defense and very helpful to the prosecution. This was not a case that hinged on one or two facts or the testimony of one or two witnesses. Nevertheless, the PCRA court found that the testimony of Wright and Tribuiani "was the crux" of the Commonwealth's case.[3] Based on our review of the record, we conclude that the PCRA court's finding in this regard is erroneous as it is not supported by the record. The PCRA court also fails to specifically address whether or how the Commonwealth's with-

2. The opinion prepared by the PCRA court dated July 31, 2007, is one and one-half pages in length. Therein, the PCRA court states:

Robert Dougherty, attorney for [Appellee], went to trial without the available evidence that the defense was entitled to under the law. Such conduct violated the United States Constitution and appropriate case law, and I find the Commonwealth's conduct outrageous. [Appellee], without question, is for this reason alone entitled to a new trial.

PCRA Court Opinion, dated 7/31/07, at 1.

The combined length of the Findings of Fact and Opinion filed October 31, 2007, is three and one-half pages. Therein, the PCRA court sets forth the following Finding of Fact:

6. The crux of the Commonwealth['s] case at the jury trial was the testimony of jailhouse informants Sam Tribuiani and Kerm Wright. Thus, their credibility was obviously of grave importance.

PCRA Court Findings of Fact, dated 10/31/07, at 1.

In its accompanying opinion, the PCRA court held that the undisclosed material "would have without question aided defense counselor, Robert Dougherty, in attacking the credibility of the key Commonwealth witnesses." PCRA Court Opinion, dated 10/31/07, at 1. The PCRA court also noted: "[f]or J. Scott Robinette, prosecutor at the trial of this matter for the Commonwealth, to testify at the PCRA hearing in this matter that in his opinion[, the] credibility of the Commonwealth's key witnesses that identified [Appellee] in this matter was not really an important issue is beyond belief." PCRA Court Opinion, dated 7/31/07, at 1–2.

3. The PCRA court was not the trial court, and its finding of fact that the testimony of these witnesses was the crux of the Commonwealth's case is not based on any personal observation of or participation in the trial proceedings.

holding of alleged impeachment evidence undermines confidence in the verdict. *Kyles, supra.* Simply put, the PCRA court has not directly addressed the salient inquiry of whether or not Appellee received a fair trial under the circumstances. Accordingly, we remand for the court to do so. We emphasize on remand that the question is not whether the jury would likely have reached a different verdict had the alleged impeachment evidence regarding Wright and Tribuiani's credibility been disclosed, but whether, in the absence of the alleged impeachment evidence, Appellee got a fair trial worthy of confidence in the verdict. *Id.* In its determination, the court must consider whether disclosure of the impeachment evidence to competent counsel would have made a different result reasonably probable. *Id.* This will necessarily entail a review of all the evidence presented at trial, not for its sufficiency, but for the potential negative effect disclosure of the alleged impeachment evidence would have had thereon. *Id.* For example, the impact of Sharon Pearson's testimony regarding the quilt and her interactions with Appellee on the morning of October 24, 1978, would undoubtedly have been completely unaffected by disclosure of the impeachment evidence casting doubt on the reliability of Wright and Tribuiani. We further emphasize that we express no view as to the merits of Appellee's *Brady* claim, but remand to the PCRA court for a meaningful analysis of the claim.[4]

We turn now to the Commonwealth's claim that the PCRA court erred when it failed to conclude that Appellee's conflict

4. We caution the PCRA court on remand against over-reliance upon any party's submissions as the basis for explaining its rulings. We generally discourage the practice of wholesale adoption of facts or law as presented by litigants. *Commonwealth v. Williams,* 557 Pa. 207, 732 A.2d 1167, 1176 (1999) (admonishing PCRA court against wholesale adoption of one advocate's position at a critical stage of the proceedings; calling for autonomous judicial expression of reasons for decision); *Id.* at 1192 (opining that appellate review should not proceed until PCRA court files a proper opinion) (Castille, J., concurring). Moreover, a fact-finding court should support its determinations with sufficient explanations of the facts and law, including specific citations to the record for all evidence on which it relies, and to the legal authority on which it relies, to facilitate appellate review. *Cf. Commonwealth v. Norris,* 256 Pa.Super. 196, 389 A.2d 668 (1978).

of interest issue had been waived. In its disposition of Appellee's PCRA petition, the PCRA court determined, without elaboration, "The public Defender's Office that represented [Appellee] also represented K[ermeth] Wright at the time of trial and this was obviously an actual conflict. The [trial c]ourt committed error when there was no further inquiry into the matter and a record made of that inquiry." PCRA Court Opinion, dated 7/31/07, at 2. In its opinion *sur* appeal, the PCRA court did not discuss the Commonwealth's claim on appeal, as set forth in its Rule 1925(b) statement, that Appellee had waived the conflict of interest issue by failing to challenge on direct appeal the propriety of the trial court's pre-trial ruling on Appellee's motion for the appointment of new counsel. Instead, the PCRA court proceeded directly to a merits discussion, and found as fact that "[t]he Public Defender's Office represented Kerm Wright at the time of trial." Findings of Fact, dated 10/31/07, at 2.

This Court has recently stated:

In order to be eligible for PCRA relief, [a petitioner] must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found at 42 Pa.C.S. § 9543(a)(2) (setting forth the eligibility requirements of the PCRA). Further, [a petitioner] must demonstrate that the issues raised in his PCRA petition have not been previously litigated or waived. *Id.* at § 9543(a)(3). An issue has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." *Id.* at § 9544(a)(2). A PCRA claim is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." *Id.* at § 9544(b). Further, we no longer apply the relaxed waiver doctrine in capital PCRA appeals.

*Commonwealth v. Ligons*, 971 A.2d 1125, 1137 (Pa.2009).

Appellee argues in his brief before this Court that the conflict of interest issue was not waived because Appellee was

represented on direct appeal by the same conflicted counsel who represented him at trial. Thus, Appellee suggests his first opportunity to challenge counsel's effectiveness for failing to raise the "conflict of interest issue" was in a post-conviction collateral petition. While this argument, on its face, correctly expresses the law with regard to the restriction on self-accusation of ineffectiveness, it is wholly unavailing. There simply is no reason why counsel could not have claimed on direct appeal that the trial court had erred in denying the pre-trial motion seeking the appointment of new counsel. The essential question here is the propriety of the trial court's summary denial of Appellee's motion for the appointment of new counsel due to a conflict of interest, and the derivative question is whether counsel was ineffective for failing to raise this allegation of trial court error on direct appeal. Whether the trial court erred and whether counsel was ineffective for failing to raise the issue of trial court error are separate, discrete inquiries, see *Commonwealth v. Collins*, 585 Pa. 45, 888 A.2d 564, 570 (2005), and Appellee has clearly waived the former. We make no determination regarding the appealability of the latter, but instruct the PCRA court, on remand, to determine whether Appellee properly raised this ineffectiveness claim in his pleadings.

Given that the conflict issue is cognizable only to the extent it sounds in ineffectiveness of counsel, and because the PCRA court may, on remand, undertake an analysis of the propriety of the trial court's ruling, we are compelled to express our disagreement with the PCRA court's finding that trial counsel represented Wright and Appellee simultaneously.[5] What is involved in this matter is clearly a case of successive, not concurrent, representation. The Indiana Public Defender's Office began its representation of Kermeth Wright in an unrelated matter in August 1995. Wright was

---

5. As explained above, the PCRA court determined counsel "that represented [Appellee] also represented K[ermeth] Wright **at the time of trial[,]**" PCRA Court Opinion, dated 7/31/07, at 2 (emphasis added). Further, the PCRA court found as fact that "[t]he Public Defender's Office represented Kerm Wright **at the time of trial.**" Findings of Fact, dated 10/31/07, at 2 (emphasis added).

sentenced in that matter on January 15, 1996. Appellee's trial began approximately **one week** before Wright's sentence was to **expire**. It appears the PCRA court concluded there was simultaneous representation here only by crediting Appellee's argument that a defender's representation of a client continues until such time as the client's sentence expires. We do not adopt this view of potentially perpetual assumed representation. We note that the circumstances of this case do not implicate the automatic reversal rule set forth in *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), applicable to cases in which counsel is forced to represent codefendants over his or her timely objection, unless the trial court has determined that there is no conflict. Where, as here, there is a claimed conflict rooted in counsel's obligations to former clients, it is "at least necessary, to void the conviction, for [the] petitioner to establish that the conflict of interest adversely affected his counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 174, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002).

For the reasons set forth above, we vacate the order of the PCRA court and remand this case to that court for further proceedings in accordance with this Opinion.[6]

Chief Justice CASTILLE, Justices SAYLOR, EAKIN and TODD join the opinion.

Justice BAER files a dissenting opinion in which Justice GREENSPAN joins.

Justice BAER, dissenting.

I respectfully dissent from the portion of the Majority's decision, which remands this case to the PCRA court for preparation of a more detailed opinion regarding that court's grant of a new trial on Appellee's *Brady*[1] claim. While the

6. The PCRA court should, of course, consider any properly raised and preserved ineffectiveness claims that it has not heretofore addressed, if resolution of those claims is necessary to a complete disposition.

1. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

PCRA court's opinion[2] lacks a comprehensive discussion of the individual components of a *Brady* claim, further elaboration is unnecessary because it is self-evident that the PCRA court believed Appellee was prejudiced by the Commonwealth's failure to disclose evidence impeaching the testimony of two jailhouse informants. The PCRA court found that the jailhouse informants' testimony, which established that Appellee confessed to the murder, was the "crux of the Commonwealth case" against Appellee, and that the credibility of such witnesses was, consequently, of "grave importance." PCRA Court Findings of Fact, 10/31/2007, at No. 6. It described the Commonwealth's withholding of impeachment evidence as "outrageous," and concluded, "without any hesitation," that Appellee was entitled to a new trial. PCRA Court Opinion, 7/31/2007, at 1–2. Thus, it is clear that the PCRA court believed that, had the Commonwealth disclosed the impeachment evidence to the defense, there is a reasonable probability that the result of the proceeding would have been different. A remand for the PCRA court to state expressly what is obvious from its ruling is simply unwarranted.

Moreover, while emphasizing that our Court "express[es] no view as to the merits of Appellee's *Brady* claim," Op. at 587, 986 A.2d at 817, the Majority nevertheless proceeds to find that the PCRA court's conclusion that the informants' testimony was the crux of the Commonwealth's case "is erroneous as it is not supported by the record." *Id.* at 586, 986 A.2d at 816. Further, it opines that the damaging testimony against Appellee from Sharon Pearson[3] "would not be impacted by disclosure of the impeachment evidence casting doubt on the reliability of [jailhouse informants] Wright and Tribuiani." *Id.* Upon review of the record, I disagree with these assessments.

2.  My use of the phrase "PCRA court's opinion," encompasses the PCRA court's Opinion and Order dated July 31, 2007, as well as its "Findings of Fact" and "Opinion" issued pursuant to Pa.R.A.P. 1925(a), which were dated October 31, 2007.

3.  Sharon Pearson was Appellee's former wife at the time of trial. She testified that the car that she and Appellee shared had blood smeared on the back of the front seats on the morning after the murder. She further testified that the homemade quilt in which the victim's body was found was the same quilt that was kept in the back of the car.

As explained in detail *infra*, I believe that the evidence presented at trial was equally consistent with both the prosecution's theory of the case and the defense asserted by Appellee. Thus, the jailhouse informants' testimony that Appellee had confessed to the murder became of paramount importance. Accordingly, as the PCRA court's ruling on Appellee's *Brady* claim is supported by the record and is free of legal error, under this Court's well-established standard of review, the lower court's grant of a new trial should be affirmed. *See Commonwealth v. Johnson*, 600 Pa. 329, 966 A.2d 523, 532 (2009) (holding that we must affirm the order of the PCRA court if the facts as found by the court are supported by the record, and the legal conclusions drawn therefrom are free from legal error).

"[T]o establish a *Brady* violation, a defendant is required to demonstrate that exculpatory or impeaching evidence, favorable to the defense, was suppressed by the prosecution, to the prejudice of the defendant." *Commonwealth v. Ly*, 980 A.2d 61, 75 (Pa.2009) (citing *Commonwealth v. Gibson*, 597 Pa. 402, 951 A.2d 1110, 1126 (2008)). "To satisfy the prejudice inquiry, the evidence suppressed must have been material to guilt or punishment." *Id.* at 76 (citing *Gibson*, 951 A.2d at 1126–1127 (Pa.2008)). Materiality, in turn, "extends to evidence affecting the credibility of witnesses, rather than merely to purely exculpatory evidence." *Id.* Finally, "[f]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (citing *Kyles v. Whitley*, 514 U.S. 419, 433–34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (internal quotation marks omitted)).

Here, the record establishes that jailhouse informants Samuel Tribuiani and Kermeth Wright actively sought favorable treatment in exchange for their testimony that Appellee confessed to murdering Barbara Bruzda. The record further establishes that, in accordance with their request, the prosecutor made phone calls and sent letters to various state authorities seeking favorable treatment on their behalf, and sent copies of these letters to Tribuiani and Wright prior to Appel-

lee's trial. Notwithstanding a pre-trial request for those communications among the jailhouse informants, the Commonwealth, and the various entities and individuals to whom the Commonwealth reached out on behalf of the jailhouse informants, the Commonwealth did not disclose any of this evidence to the defense. Then, remarkably, at Appellee's trial the Commonwealth presented evidence that neither Tribuiani nor Wright had asked for or received any favorable treatment in exchange for their testimony. Thus, it is clear that the Commonwealth suppressed evidence that was exculpatory in that it reflected on the credibility of the Commonwealth's witnesses. Our inquiry therefore focuses on whether Appellee was prejudiced by the Commonwealth's failure to disclose, *i.e.,* whether there is a reasonable probability that if the evidence had been disclosed to the defense, the result of the proceeding would have been different. *Commonwealth v. Strong,* 563 Pa. 455, 761 A.2d 1167, 1171 (2000).

A review of the record reveals that the prosecution's failure to disclose information relating to Tribuiani and Wright's credibility undermines confidence in the outcome of Appellee's trial, and creates a reasonable probability that if Appellee had been given such evidence and employed it to impeach the jailhouse informants, a different outcome of the trial could have resulted. Initially, I point out that this was not an "open and shut case" for the prosecution. In fact, the police investigation into the identity of the perpetrator of Barbara Bruzda's murder extended nearly 18 years. The victim's body was discovered on March 20, 1979, and Appellee's murder charges were not filed until February 20, 1997, significantly, after the prosecution obtained the statements from Tribuiani and Wright. Moreover, as acknowledged by the Majority, Op. at 579–81, 986 A.2d at 812–13, Appellee's defense at trial was that he was not involved in the murder. Appellee testified that, on the night of the incident, the victim had been a passenger in his vehicle while he was driving on a remote road, and that Sharon Pearson's brothers forcibly stopped Bruzda and him, dragged Appellee from the vehicle, and beat

594

him with a club until he was unconscious. According to Appellee, when he regained consciousness, Bruzda was gone.

Thus, the evidence that Appellee had borrowed a tire iron, that the victim's injuries were consistent with injuries inflicted by such an object, that there was blood in Appellee's car on the morning after the murder, and that the quilt in which the victim had been wrapped was missing from the back seat of Appellee's vehicle, is equally consistent with both the prosecution's theory of the case (that Appellee killed Bruzda with a tire iron and wrapped her in the quilt in his vehicle) and Appellee's defense (that Pearson's brothers beat him until he was unconscious and proceeded to kill Bruzda with the tire iron found in Appellee's car, and wrap her body in the quilt, also found in the car). Thus, Appellee's confessions of guilt made to Tribuiani and Wright were, as the PCRA court found, the "crux of the case" against him.[4] Had the withheld evidence regarding the informants' deals for favorable treatment been presented at trial, there is a reasonable probability that the jury, while balancing the equally plausible theories posited by the Commonwealth and the defense, would have been swayed to make credibility determinations in Appellee's favor, and would have concluded that there was reasonable doubt as to Appellee's guilt.

Under these circumstances, I cannot agree with the Majority's conclusion that there was no support in the record for the PCRA court's finding that the informant's testimony was the 'crux of the case.' Op. at 586, 986 A.2d at 816.[5] Further, I cannot agree with the Majority's assertion that "the impact of

4. I recognize that there was a third individual to whom Appellee purportedly confessed. David Townsend testified at Appellee's trial that, in 1989, Appellee told him that he killed a girl named Barb. Nevertheless, I adhere to the view that the testimony of Tribuiani and Wright were critical to the prosecution's case against Appellee as the testimony of three informants is significantly more damaging than that of one.

5. I further note that the prosecutor testified at the PCRA evidentiary hearing that, in hindsight, the credibility of Tribuiani and Wright was not very important to the prosecution. As set forth by the Majority, Op. at 582, 986 A.2d at 813–14, the PCRA court expressly found such testimony to be "incredible" and "truly preposterous." Id. (citing N.T. PCRA Hearing, 3/30/07, at 116–17).

Sharon Pearson's testimony regarding the quilt and her interactions with Appellee on the morning of October 24, 1978 [the morning after the murder], would undoubtedly have been completely unaffected by disclosure of the impeachment evidence casting doubt on the reliability of Wright and Tribuiani." Op. at 587, 986 A.2d at 816. To the contrary, if the jury had known that the jailhouse informants who testified against Appellee sought favorable treatment from the prosecution, and that the prosecutor was actively trying to arrange such treatment with the knowledge of the jailhouse informants, the jury may well have viewed Pearson's testimony regarding the blood and missing quilt from Appellee's vehicle as consistent with both the Commonwealth's and Appellee's case. More crucially, the jury could have discounted the jailhouse confessions and found that the Commonwealth failed to prove its case beyond a reasonable doubt. Whether favorable treatment was, in fact, obtained as a result of the prosecution's efforts to assist Tribuiani and Wright is irrelevant, as it is the motive to fabricate testimony in exchange for any promise of leniency that was relevant and should have been presented to the jury.

As the PCRA court's finding of a *Brady* violation is supported by the record and free from legal error, I would affirm the grant of a new trial; because the Majority's holding to the contrary offends our standard of review applicable to PCRA proceedings, I dissent.

Justice GREENSPAN joins this opinion.