J-S28027-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER BARTON | : | |
| | : | |
| Appellant | : | No. 879 WDA 2022 |

Appeal from the Judgment of Sentence Entered May 19, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001241-2020

BEFORE: PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                    **FILED: October 17, 2023**

Appellant, Christopher Barton, appeals from the judgment of sentence entered on May 19, 2022, following his bench trial convictions for driving under the influence (DUI) of alcohol (high rate of alcohol), DUI (general impairment), accident involving damage to unattended vehicles, reckless driving, and failure to notify police.[1] We affirm.

The trial court summarized the facts of this case as follows:

On December 20, 2019, [Pittsburgh Police] Officers [Joseph] Mangiarelli and [Brett] Maloney responded to a hit-and-run accident on Route 51 [near] Saw Mill Run [Boulevard], in front of Pittsburgh Auto Dealership. At approximately 2:30 a.m., the officers arrived at the scene and observed an unattended vehicle

---

* Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(b), 3802(a)(1), 3745(a), 3736(a), and 3746(a)(2), respectively.

that struck a Verizon utility pole and damaged two vehicles in the Pittsburgh Auto Dealership lot.

At the scene, Officer Mangiarelli ran the vehicle's registration plate through the [National Crime Information Center database] and learned that the vehicle was registered to [Appellant]. The officers looked inside the vehicle and observed a cell[ular telephone] on the driver side floor. During the investigation, Officer Maloney spoke to witnesses who observed an individual running away from the scene. The officer relayed through [police] radio that they were looking for an individual of a certain description that had just fled the area.

At 2:50 a.m., the responding officers were notified that Sergeant [Michael] Douglas, detained an individual matching [Appellant's] description "staggering" on Library Road [which intersects with Route 51]. [] Sergeant [Douglas] testified that [Appellant's] speech was slurred, and his answers were vague. In response to questioning, [Appellant stated] he was "just going for a walk." Notably, [Appellant] was walking outside in 20-degree weather, wearing a hoodie and jeans, and on a roadway in an industrial area without any sidewalks. [Appellant] was located approximately one and a half miles from the accident site.

Upon contact with [Appellant], the responding officers observed that [Appellant's] person and breath smelled moderately of alcohol and that his speech was slurred and mumbled. The officers confirmed [Appellant's] identity verbally and [examined] his driver's license. During questioning[, Appellant] was vague in his responses. [Appellant] told the officers that he was walking home and when asked where he was coming from, [Appellant] responded, "I don't know."

During this time, [Appellant] realized he did not have his cell[ular tele]phone on him. The police called [Appellant's cellular telephone] using a number he provided and discovered [Appellant's] cell[ular tele]phone was [the device located on the driver's side floorboard inside the unattended vehicle discovered by responding officers at the automobile dealership]. In addition, [Appellant] identified himself on the [] voicemail message, which further confirmed that the cell[ular tele]phone left inside the vehicle belonged to [Appellant].

Officers detained [Appellant] and transported him [] for a [blood] test[,] the results of which revealed that [Appellant] had a [blood alcohol content] of 0.128 %.

Trial Court Opinion, 12/7/2022, at *2-3 (unpaginated).

On August 12, 2021, following a bench trial, Appellant was convicted of the aforementioned crimes. After the verdict, counsel for Appellant orally moved for judgment of acquittal, challenging the sufficiency of the evidence. Thereafter, Appellant filed a brief in support of his motion for judgment of acquittal. When Appellant appeared for sentencing on May 19, 2022, the trial court initially denied Appellant's motion for judgment of acquittal and then sentenced Appellant to an aggregate term of two to four years of incarceration. Appellant filed a post-sentence motion on May 31, 2022. The trial court denied relief by order entered on July 6, 2022. Appellant filed a timely notice of appeal on August 3, 2022. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on December 7, 2022.

On appeal, Appellant presents the following issue for our review:

I.    Whether there was sufficient evidence presented at trial to prove that [Appellant] drove, operated, or was in actual physical control of the movement of his vehicle the night in question when officers did not see [Appellant] driving the vehicle and he was apprehended approximately 1.5 miles away from the accident scene[?]

Appellant's Brief at 9.

Appellant argues that "all the evidence presented at trial was circumstantial" and "the Commonwealth was unable to produce any direct evidence that Appellant was ever in physical control of [the] vehicle" involved in the incident at issue. *Id.* at 14. Appellant contends that each of his five convictions required the Commonwealth to prove beyond a reasonable doubt

that he was, in fact, the driver. *Id.* at 17. Appellant contends that none of the investigating officers saw the accident and "the Commonwealth presented no other witnesses or evidence indicating [Appellant] was anywhere near the vehicle[.]" *Id.*

Additionally, in further support of his sufficiency argument, Appellant asserts that the Commonwealth failed to disclose video footage from the accident scene and police body cameras which the Commonwealth's police witnesses referred to at trial. *Id.* at 14. Appellant maintains that he made both informal and formal requests for discovery of the alleged surveillance before trial. *Id.* at 19. Moreover, the trial court granted Appellant relief and directed the Commonwealth, both before and after trial, to turn over video surveillance by orders entered on August 31, 2020 and March 2, 2022, respectively. *Id.* The Commonwealth never produced the video footage and never explained its failure to do so. *Id.* Appellant, therefore, argues that "[t]he Commonwealth's failure to produce this crucial videographic evidence, or to account for its absence, at the very least, should have raised a concern that such evidence, if presented, would have been favorable" to Appellant because "[i]t certainly contained special information material to the issue of whether [Appellant] was in fact the operator of the incident vehicle." *Id.* As such, citing Pennsylvania Suggested Standard Jury Instruction 3.21B,[2]

_____

[2] Pursuant to Pennsylvania Suggested Standard Criminal Jury Instruction 3.21B, "[a] jury is allowed to draw a common-sense inference that [an] item
*(Footnote Continued Next Page)*

Appellant asserts that the trial court "was permitted to, and arguably should have, drawn a common-sense inference that … the video would have contradicted the Commonwealth's case in chief." *Id.* at 19-20. Appellant suggests "[f]or example, body camera footage might not have shown [Appellant's] cell[ular tele]phone was located in the vehicle [or, m]ore importantly, video of the crash might have shown someone besides [Appellant] in operation of the vehicle." *Id.* at 20-21.

First, before examining the portion of Appellant's sufficiency claim pertaining to discovery, we are mindful that "[i]n conducting our review, we consider all of the evidence actually admitted at trial and do not review a diminished record." ***Commonwealth v. Dale***, 836 A.2d 150, 152 (Pa. Super. 2003) (citation omitted). We have previously determined:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime

---

would have been evidence unfavorable to that party" when "there is no satisfactory explanation for [that] party's failure to produce an item," and (1) "the item is available to that party and not to the other"; (2) "it appears the item contains or shows special information material to the issue"; and (3) "the item would not be merely cumulative evidence." Pa.SSJI (Crim) § 3.21B.

- 5 -

beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Johnson***, 833 A.2d 260, 262–263 (Pa. 2003) (case citations omitted).[3]

---

[3] Here, Appellant was also convicted of accidents involving damage to unattended property which states "[t]he driver of any vehicle which collides with or is involved in an accident with any vehicle or other property which is unattended resulting in any damage to the other vehicle or property shall immediately stop the vehicle at the scene of the accident or as close thereto as possible and shall then and there either locate and notify the operator or owner of the damaged vehicle or other property of his name, address, information relating to financial responsibility and the registration number of the vehicle being driven or shall attach securely in a conspicuous place in or on the damaged vehicle or other property a written notice giving his name, address, information relating to financial responsibility and the registration number of the vehicle being driven and shall without unnecessary delay notify the nearest office of a duly authorized police department. Every stop shall be made without obstructing traffic more than is necessary." 75 Pa.C.S.A. § 3745. "Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." 75 Pa.C.S.A. § 3736. "The driver of a vehicle involved in an accident shall immediately by the quickest means of communication give notice to the nearest office of a duly authorized police department…" 75 Pa.C.S.A. § 3746.

We note, however, that aside from arguing that the Commonwealth failed to prove he was driving, Appellant does not challenge any of the other elements of the offenses for which he was convicted. Appellant does not refute that he was intoxicated or otherwise challenge the results of his blood alcohol content test. He does not dispute that there was damage to unattended vehicles, that the vehicle in question was driven in willful or wanton disregard for the safety of persons or property, and/or that the police were not called following the accident. As such, we confine our analysis to whether the Commonwealth introduced sufficient evidence that Appellant drove, operated, or was in actual physical control of the motor vehicle discovered in the dealership lot.

The DUI-general impairment statute provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(a)(1).

The statute providing for the crime of DUI (high rate of alcohol) states, "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(b).

This Court has previously determined:

> The term 'operate' requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion. The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor vehicle. Courts review a combination of the following factors to determine whether a person had 'actual physical control' of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle. A determination of actual physical control of a vehicle is based upon the totality of the circumstances.

*Commonwealth v. Fallon*, 275 A.3d 1099, 1105 (Pa. Super. 2022) (internal citations and most quotations omitted). "Under the applicable standards, to sustain a [DUI] conviction, the facts and circumstances established by the

Commonwealth need not preclude every possibility of innocence." ***Johnson***, 833 A.2d at 264 (citation omitted). "Further, the Commonwealth [is] not required to establish [an a]ppellant's guilt to a mathematical certainty." ***Id.*** (citation omitted). Instead,

> the Commonwealth may establish, by the totality of the circumstances, that a defendant was driving, operating or in actual physical control of a motor vehicle. It is not necessary that the vehicle itself must be in motion but that it is sufficient if the operator is in actual physical control of either the machinery of the motor vehicle or of the management of the movement of the vehicle itself. As we [previously] noted[,] it seems illogical and unreasonable to permit the operator of a vehicle to be exonerated from the responsibility and liability for his actions simply because there were no witnesses except the appellant who saw the accident or the driving appellant.

***Id.*** at 266 (case citations, quotations, and original brackets omitted). "Under Pennsylvania law, an eyewitness is not required to establish that a defendant was driving, operating, or was in actual physical control of a motor vehicle."
***Id.*** at 263. Finally, the ***Johnson*** Court recognized that

> [t]aken to its ultimate conclusion, [Johnson's] argument is that when a driver involved in a motor vehicle accident gets out of the vehicle before the police arrives and before anyone else could see him, the driver cannot be convicted of any crimes associated with, or resulting from the accident. This proposition has no basis in Pennsylvania law and does not comport with the standards which our courts utilize in reviewing sufficiency of the evidence claims.

***Id.*** at 264.

Here, the trial court determined:

> [T]he evidence presented at trial was credible and sufficient to establish that [Appellant] drove or was in actual physical control of a motor vehicle. The vehicle involved was registered to

- 8 -

> [Appellant] and his cell[ular tele]phone was located inside. Moreover, [Appellant's] description matched identically to the one provided by [a] witness who observed the individual exit the vehicle and proceed to run away from the accident and the police located [Appellant] in the direction the witness indicated the individual departed. Hence, the fact [Appellant] did not have his [cellular tele]phone on him, was walking down Library [Road] where there are no sidewalks in approximately 20-degree temperatures around 3:00 a.m. in just a hoodie and jeans allows for the reasonable inference that [Appellant] had recently been driving his vehicle that night, crashed, and abandoned the scene forgetting his cell[ular tele]phone inside the vehicle.

> [Appellant's] proximity to the accident scene, in which a vehicle registered in his name was involved, and the short amount of time that passed between the accident and [Appellant's] apprehension allows for the reasonable inference that [Appellant] was driving his vehicle while intoxicated, crashed his vehicle and abandoned the scene.

Trial Court Opinion, 12/7/2022, at *3-4 (unpaginated). Accordingly, the trial court determined "that there was sufficient evidence presented to establish that [Appellant] drove, operated, or was in actual physical control of his motor vehicle[.]" *Id.* at *4 (unpaginated).

Upon our review, we agree with the trial court that Appellant's challenge to the sufficiency of the evidence should be rejected. The Commonwealth presented overwhelming circumstantial evidence that Appellant drove, operated, and/or was in actual control of the vehicle when he crashed his vehicle into a utility pole and two unattended vehicles. Appellant does not challenge the trial court's reliance on evidence that an eyewitness observed a single individual, matching Appellant's description, flee from the vehicle and scene following the accident. The eyewitness told police the direction the individual fled and what he was wearing. Police apprehended Appellant a short

time later in the general area specified by the eyewitness, wearing clothing that matched the witness's description. As such, we reject Appellant's assertion that no one saw him operating the vehicle. Moreover, the Commonwealth presented sufficient, circumstantial corroborating evidence confirming Appellant's identity as the driver including his ownership of the vehicle in question, his implausible excuse for walking in freezing temperatures late at night in an industrial area with no sidewalks in close proximity to the accident scene, and his hasty exit from the vehicle wherein he left his cellular telephone on the floor of the driver's side of the vehicle. Accordingly, we reject Appellant's suggestion that because he was not discovered in or near the vehicle the Commonwealth failed to prove that he was driving, operating, and/or in actual control of his vehicle. Considering the totality of the evidence actually presented at trial, we conclude that Appellant is not entitled to relief on his sufficiency of the evidence claim.

Next, we examine the portion of Appellant's sufficiency claim that rests upon the Commonwealth's alleged discovery violation. Initially, we note that Appellant relies exclusively upon the standard suggested missing evidence jury instruction, Pa.SSJI (Crim) § 3.21B. Because Appellant has not cited relevant legal authority nor developed any meaningful analysis in his appellate brief, his contention is subject to waiver. *See* Pa.R.A.P. 2119(a); ***Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion

- 10 -

capable of review, that claim is waived."). Additionally, Appellant's reliance on Pa.SSJI (Crim) § 3.21B is misplaced because this case proceeded to a bench trial and was not heard before a jury. Proposed jury instructions in this case, therefore, were wholly irrelevant. However, the trial court was well aware of the ongoing dispute over the surveillance videos, with counsel for Appellant raising the issue again during closing arguments and, therefore, we presume that the trial court considered the alleged missing evidence during its deliberation. *See Commonwealth v. Harvey*, 526 A.2d 330, 333 (Pa. 1987) ("[W]here a criminal case is tried before a judge sitting without a jury, there is a presumption that [her] knowledge, experience and training will enable [her] to disregard inadmissible evidence and other improper elements.").

In addition, our Supreme Court has previously recognized:

> In *Brady* [v. *Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963)], the United States Supreme Court declared that due process is offended when the prosecution withholds evidence favorable to the accused.... The *Brady* court established the obligation of the prosecution to respond affirmatively to a request for production of exculpatory evidence with all evidence material to the guilt or punishment of the accused. Where evidence material to the guilt or punishment of the accused is withheld, irrespective of the good or bad faith of the prosecutor, a violation of due process has occurred.

*Commonwealth v. Weiss*, 986 A.2d 808, 814 (Pa. 2009) (citation omitted).

Whether the trial court erred when ruling on an alleged *Brady* violation presents a question of law, for which our standard of review is *de novo* and

- 11 -

our scope of review is plenary. *See Commonwealth v. Bagnall*, 235 A.3d

1075, 1084 (Pa. 2020).

Moreover, our Supreme Court has stated:

The [United States] Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused and that the duty encompasses impeachment evidence as well as directly exculpatory evidence. On the question of materiality, the [United States Supreme] Court has noted that such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. Rather, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.[4] Thus, there are three necessary components that

_____

[4] More specifically, our Supreme Court in *Weiss* stated:

In determining whether a reasonable probability of a different outcome has been demonstrated, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is shown when the government's suppression of evidence undermines confidence in the outcome of the trial. The United States Supreme Court has made clear that [such] materiality standard is not a sufficiency of the evidence test. A *Brady* violation is established by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Importantly, the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense.

*(Footnote Continued Next Page)*

demonstrate a violation of the *Brady* strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued.

[Pennsylvania Rule of Criminal Procedure] 305 was promulgated in response to the dictates of *Brady*. The rule provides, in pertinent part, as follows:

**(B) Disclosure by the Commonwealth**

(1) Mandatory. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused which is material either to guilt or to punishment, and which is within the possession or control of the attorney for the Commonwealth.

Pa.R.Crim.P. 305(B)(1)(a). In the event of a violation of Rule 305, the trial court may order the offending party to permit discovery or inspection, may grant a continuance, or may prohibit the offending party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances." Pa.R.Crim.P. 305(E).

---

In order to be entitled to a new trial for failure to disclose evidence affecting a witness's credibility, the defendant must demonstrate that the reliability of the witness may well be determinative of his guilt or innocence. In assessing the significance of the evidence withheld, a reviewing court must bear in mind that not every item of the prosecution's case would necessarily have been directly undercut had the *Brady* evidence been disclosed.

*Weiss*, 986 A.2d at 815 (internal citations, quotations and original brackets

omitted)

*Commonwealth v. Burke*, 781 A.2d 1136, 1141 (Pa. 2001) (internal case citations, quotations, and original brackets omitted).

The *Burke* Court further recognized:

As a Rule 305 matter, the trial court has discretion in framing an appropriate remedy for a discovery violation. The "remedy" provision in the Rule lists numerous appropriate courses of remedial action, such as permitting discovery or inspection, granting a continuance, or prohibiting introduction of evidence. It is notable, however, that the Rule does not authorize an outright dismissal of charges, except to the extent that the residual phrase, "or ... such other order as [] deem[ed] just under the circumstances," could be said to encompass the extreme remedy of discharge. It is equally notable that [Pennsylvania Supreme Court] research has revealed [no line of cases] that approve or require a discharge as a remedy for a discovery violation. In fact, [] precedent[] support[s] the view that [] discharge [is] too severe.

Thus, while it is undoubtedly true that the trial court possesses some discretion in fashioning an appropriate remedy for a *Brady* violation, that discretion is not unfettered. It must be exercised in light of the competing values weighed in the *Brady* analysis, and in light of the teachings in prior cases involving similar concerns.

\* \* \*

Because of the compelling societal interest in prosecuting criminal defendants to conclusion, [our Supreme] Court has recognized that dismissal of charges is an extreme sanction that should be imposed sparingly and [] only in cases of blatant prosecutorial misconduct. As [] Justice Cappy, in his Opinion Announcing the Judgment of the Court in *Commonwealth v. Shaffer*, 712 A.2d 749, 752 (Pa. 1998), explained:

Dismissal of criminal charges punishes not only the prosecutor ... but also the public at large, since the public has a reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the full extent of the law. Thus, the sanction of dismissal of criminal charges should be utilized only in the most blatant cases.

- 14 -

> Given the public policy goal of protecting the public from criminal conduct, a trial court should consider dismissal of charges where the actions of the Commonwealth are egregious and where demonstrable prejudice will be suffered by the defendant if the charges are not dismissed.
>
> ***Id.*** [] at 752; ***see also Commonwealth v. McElligott***, 432 A.2d 587, 589 (Pa. 1981) ("The remedy of discharge without a fair and complete fact-finding procedure is extreme and will not be invoked absent deliberate bad faith prosecutorial misconduct"); ***Commonwealth v. Smith***, 615 A.2d 321, 325 (Pa. 1992) (dismissal of charges is appropriate only where "prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, or where the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial").

***Id.*** at 1143–1144 (original brackets and some case citations and quotations omitted). "While [the ***Burke***] Court [did] not minimize the ethical and legal obligations of the prosecution to comply with lawful discovery requirements, [the Court ultimately held that] where there is no evidence of deliberate, bad faith overreaching by the prosecutor intended to provoke the defendant into seeking a mistrial or to deprive the defendant of a fair trial, the proper remedy for the Commonwealth's failure to disclose exculpatory materials should be less severe than dismissal." ***Id.*** at 1146.

Here, the trial court twice directed, by order of court, the Commonwealth to produce the requested videotaped surveillance. Such actions were proper under Rule 305. At trial, Appellant averred that he still had not received the videotaped surveillance but did not request a continuance. Instead, Appellant argued that the trial court should draw a common-sense inference that the withheld evidence was favorable to him.

Appellant makes no showing that the missing video footage was material, much less exculpatory or likely to undermine our confidence in the credibility of the Commonwealth's witnesses or the outcome of this case. Hence, Appellant failed to meet the burden needed to prove his entitlement to a discovery sanction. Moreover, even if an inference favorable to Appellant were drawn, Appellant cannot overcome the overwhelming circumstantial evidence that identified him as the driver and placed him in control of the abandoned vehicle discovered by police. From our review of the record, there is simply no evidence of deliberate, bad faith overreaching by the Commonwealth intended to provoke Appellant into seeking a mistrial or intentionally deprive him of a fair trial. Accordingly, we conclude the trial court did not err and the second portion of Appellant's sole appellate claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/17/2023