J-S33006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FRANK JUSTINIANO | : | |
| | : | |
| Appellant | : | No. 1976 EDA 2019 |

Appeal from the PCRA Order Entered June 18, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001500-2013

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED AUGUST 19, 2020**

Appellant, Frank Justiniano, appeals from the June 18, 2019 Order entered in the Philadelphia County Court of Common Pleas denying his first Petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  Counsel for Appellant, James Lloyd, Esquire, has filed an **Anders**[1] Brief and a Motion to Withdraw as Counsel.  After careful review, we grant counsel's Motion to Withdraw and affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See Anders v. California**, 386 U.S. 738 (1967).  Although Counsel filed an **Anders** brief, the proper mechanism when seeking to withdraw in PCRA proceedings is a **Turner**/**Finley** brief.  **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988).  However, because an **Anders** brief provides greater protection to a criminal appellant, we may accept an **Anders** brief in lieu of a **Turner**/**Finley** no-merit brief.  **Commonwealth v. Widgins**, 29 A.3d 816, 817 n.2 (Pa.

**Background**

The relevant facts and procedural history are as follows. The Commonwealth charged Appellant with numerous offenses arising from his involvement, along with four other people, in an October 24, 2012 assault on the victim, Christopher Corisdeo.[2]

On December 14, 2014, Appellant proceeded to a bench trial, represented by Patrick Link, Esquire. Relevantly, Appellant's co-defendant, Brandon Baez, who had entered into a negotiated guilty plea with the Commonwealth, testified about Appellant's involvement in the assault. Baez indicated that the Commonwealth had not promised him a specific sentence in exchange for his cooperation.[3] N.T., 12/3/14, at 52. Following Appellant's trial, the court convicted him of Aggravated Assault, Attempted First-Degree

---

Super. 2011); *Commonwealth v. Fusselman*, 866 A.2d 1109, 1111 n.3 (Pa. Super. 2004).

[2] Appellant, along with three other men, beat the victim, and Appellant dropped or threw a cinderblock on Appellant's head, causing the victim to sustain serious injuries and necessitating that he undergo reconstructive surgery. The assault caused him to suffer from memory loss, speech problems, dizziness, depression, and anxiety.

[3] Another co-defendant, Alex Webb A/K/A Alexander O'Donnell Colella, also testified that he had made a statement to police implicating Appellant. N.T., 12/3/14, at 95-96. Another witness testified that she had seen Appellant throw a cinder block at the victim's face. *Id.* at 114, 116-17.

Murder, Criminal Conspiracy, and Possession of an Instrument of Crime ("PIC").[4]

On March 17, 2015, the court sentencing court sentenced Appellant to an aggregate term of 30 to 60 years' incarceration.

Attorney Link filed a timely Notice of Appeal from Appellant's Judgment of Sentence.[5]  Later that same day, Appellant filed a *pro se* Motion for Reconsideration of Sentence.  The record indicates that, because Appellant's counsel had already filed a Notice of Appeal, the trial court did not take any action on this Motion.

This Court affirmed Appellant's Judgment of Sentence on May 11, 2016. ***See Commonwealth v. Justiniano***, 151 A.3d 1144 (Pa. Super. 2016) (unpublished memorandum).  Appellant did not seek further appellate review of his Judgment of Sentence, and therefore his Judgment of Sentence became final on June 10, 2016.  ***See*** Pa.R.A.P. 903(a); 42 Pa.C.S. § 9545(b)(3).

**PCRA Proceedings**

On May 3, 2017, Appellant, through counsel, Eric S. Donato, Esquire, filed a timely first PCRA Petition, raising claims that trial counsel provided

---

[4] On February 3, 2015, while still represented by Attorney Link, Appellant *pro se* filed a Motion for Judgment of Acquittal, a Motion for a New Trial, and a Motion for New Counsel.  This Court's review of the trial court docket indicates that the trial court did not forward these pleadings to Attorney Link and did not take any action on these Motions.

[5] Todd Mosser, Esquire represented Appellant in his direct appeal.

ineffective assistance by failing to: (1) object to the introduction of improper evidence;[6] (2) call witnesses who would have allegedly been favorable to the defense;[7] and (3) pursue a Motion for Reconsideration of Sentence. He also raised two **Brady** violations[8] and asserted that appellate counsel provided ineffective assistance by failing to raise the alleged **Brady** violations on direct appeal. Petition, 5/3/17, at 1, 4, 21.

On March 13, 2018, Richard T. Bobbe, III, Esquire entered his appearance on Appellant's behalf.

**PCRA Hearing**

On April 17, 2019, the PCRA court held a hearing on Appellant's Petition. Appellant's trial counsel, Attorney Link, testified regarding the allegations of

_____

[6] Appellant claimed that Attorney Link should have objected to the testimony of Carole Watts, the mother of one the victims, as duplicative and prejudicial. Petition, 5/3/17, at 27-29.

[7] Appellant specifically claimed that his counsel should have presented the testimony of blood-spatter and medical experts to disprove the Commonwealth's assertion that Appellant had picked up and either dropped or threw a cinder block on the victim's head and that the victim's injuries were consistent with an assault of that kind. Petition, 5/3/17, at 9, 13-21. He also asserted that counsel should have called Robert Henderson, a U.S. Probation Officer, who Appellant claims would have testified that some of the Commonwealth's witnesses were biased against Appellant and had motives to incriminate Appellant. **Id.** at 29-31. Finally, Appellant averred that the trial counsel should have called alleged eyewitnesses Melanie Brown and Gina Abraham to testify on his behalf. **Id.** at 31-32.

[8] **Brady v. Maryland**, 373 U.S. 83 (1963). Appellant claims that the Commonwealth failed to disclose that it had an agreement for cooperation with Appellant's co-defendant, Brandon Baez and withheld from Appellant color crime scene photos. Petition 5/3/17, at 33-40.

ineffectiveness in Appellant's Petition.[9] With respect to Appellant's allegation that he was ineffective for failing to obtain a medical expert, Attorney Link testified that he made the strategic decision not to obtain one because he "had no basis to think that an expert would have testified that the injuries were not consistent with a cinderblock being dropped on someone's head." N.T., 4/17/19, at 18, 26-29. Counsel did not provide a specific rationale for failing to present the testimony of a blood-spatter expert. Appellant did not provide affidavits from any blood-spatter or medical experts.

Attorney Link next explained that he did not call Appellant's federal probation officer to testify because "the prejudicial effect would have outweighed whatever the federal probation officer would have laid out." *Id.* at 19-20, 30-31. Attorney Link testified that, given how involved and "on top of his case" Appellant was, he believed that he and Appellant discussed this strategy and decided not to call Appellant's federal probation officer as a witness. *Id.* at 20. Appellant did not submit an affidavit from his federal probation officer.

Attorney Link explained that Appellant testified on his own behalf at trial and advanced his theory that the Commonwealth's witnesses had a reason to lie about him. *Id.* at 30-31.

Regarding his decision not to object to the victim's mother's testimony, which Appellant characterized in his PCRA Petition as "duplicative and

---

[9] Appellant counsel Mosser did not testify at the PCRA hearing.

prejudicial," Attorney Link conceded that the testimony was "maybe . . . inflammatory," but explained that he did not object because the victim's injuries were "definitely serious" and that he "didn't feel like cutting off the mother." *Id.* at 20, 31. He also testified that he trusted that the trial court sitting as the finder of fact "could sort of partition out the inflammatory aspect of the testimony[,] make a decision based on the facts[,]" and give that witness's testimony appropriate weight. *Id.* at 20, 31.

Further, Attorney Link testified that he did not recall speaking with Appellant about his post-sentence rights before he filed the Notice of Appeal for Appellant. *Id.* at 21.

With respect to Appellant's claim that Attorney Link was ineffective for failing to call Melanie Brown and Gina Abrams as trial witnesses, Attorney Link testified that he and his investigator had spoken with those witnesses and discovered that their statements, especially as it concerned whether Appellant had blood on his sweatshirt on the day of the incident, conflicted with other witnesses' statements.[10] *Id.* at 22, 36-40. Counsel testified that he believed that he discussed this problem with Appellant because that "would be routine

_____

[10] Ms. Brown submitted an affidavit in connection with Appellant's PCRA Petition stating that she had seen Appellant on the day of the incident, that he had been wearing a grey sweatshirt with no blood on it, that she had spoken with Appellant's trial counsel on the day of trial, and that counsel had informed her that he did not need her to testify. N.T., 4/17/19, at 36. Ms. Abrams also submitted an affidavit. *Id.* at 39. Neither witnesses stated in their affidavit that they had witnessed the incident; they stated only that they saw Appellant after the incident. *Id.* The parties stipulated that Ms. Abrams would provide testimony consistent with her affidavit. *Id.* at 46-47.

for [him]" but that he did not recall the specifics of the conversation. *Id.* at 22. He further testified that Ms. Brown had not seen Appellant immediately after the incident and, therefore, she did not have direct knowledge of pertinent, disputed facts. *Id.* at 34-35.

Attorney Link also testified about the Commonwealth's use of photocopies of crime scene photos at trial, noting that "maybe [] they were not in color?" *Id.* at 23. He testified that he is sure he asked the Commonwealth for color photos, but that he thought that the Commonwealth did not have access to a color printer and "never had color photographs." *Id.* at 23, 43

Attorney Link testified that the Commonwealth shared with him cooperation agreements it had made with its witnesses, all of which included standard language to make the sentencing judge aware of the extent to the witnesses' cooperation. *Id.* at 24. He also testified that he did not become aware of any plea agreements that the Commonwealth failed to divulge prior to trial. *Id.* at 25.

On April 24, 2019, one week after the PCRA hearing, although still represented by counsel, Appellant filed *pro se* an "Amended Petition and Memorandum of Law," in which he objected to his trial counsel's omission of

the word "alleged" when referring to the weapon used against the victim. *See* Amended Petition, 4/24/19, at 1.[11]

The court took the matter under advisement. On June 18, 2019, the PCRA court denied Appellant's PCRA Petition, permitted PCRA counsel to withdraw, and appointed James R. Lloyd, Esquire, to represent Appellant in this appeal.

This timely appeal followed.[12]

## PCRA Appeal

On January 13, 2020, counsel filed an *Anders* Brief and an Application to Withdraw as Counsel. On April 16, 2020, Appellant filed a *pro se* Response to the Application.

## Counsel's Request to Withdraw

Before we consider Appellant's arguments, we must review appellate counsel's request to withdraw from representation. Pursuant to

---

[11] Appellant averred that "[t]he correct statement should be (alleged) cinderblock. Victim was attack[ed] by co-[defendants] with two[-]by[-]fours[,] sticks[,] two pieces[,] and metal pole of a chair before (alleged) cinderblock was use[d]." Amended Petition, 4/24/19 at 1. He also asserted that the Commonwealth deprived him of his "constitutionally guaranteed access to evidence" when it purportedly failed to preserve original crime scene photos, and claimed that a police investigation report used as trial evidence "never mention[ed] any blood spatter." *Id.* at 2-3.

[12] The PCRA court directed Appellant to file a Pa.R.A.P. 1925(b) Statement. After concluding that Appellant did not have any arguably meritorious issues for review, counsel instead filed a Rule 1925(c)(4) Statement. The PCRA court filed a Rule 1925(a) Opinion, in which it did not address the reasons it denied Appellant relief and, instead, stated only that it had reviewed the record and agreed with counsel's conclusion that Appellant did not raise in his appeal any non-frivolous issues of arguable merit. PCRA Ct. Op., 10/2/19, at 3.

*Turner*/*Finley*, counsel must conduct an independent review of the record before withdrawal on collateral appeal is permitted. *Commonwealth v. Pitts*, 981 A.2d 875, 876 n.1 (Pa. 2009). Counsel is then required to submit a "no merit" letter (1) detailing the nature and extent of his or her review; (2) listing each issue the petitioner wished to have reviewed; and (3) providing an explanation of why the petitioner's issues are meritless. *Id.* The court then conducts its own independent review of the record to determine if the Petition is meritless. *Id.* Counsel must also send to the petitioner: "(1) a copy of the 'no-merit' letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel." *Commonwealth v. Wrecks*, 931 A.2d 717, 721 (Pa. Super. 2007).

Our review of the record discloses that counsel has complied with each of the above requirements. Additionally, counsel served Appellant with a copy of the Motion to Withdraw and *Anders* Brief, advising him that he had the right to proceed *pro se* or with privately retained counsel. Since counsel has complied with the *Turner*/*Finley* requirements, we will proceed with our independent review of the record and the merits of Appellant's claims.

In the *Anders* Brief, counsel raises the issue of whether the PCRA court erred in determining that Appellant's claims of ineffective assistance of trial counsel lacked merit and that Appellant did not raise meritorious *Brady* claims. *Anders* Brief at 5. In Appellant's *pro se* Response to the *Anders* Brief, Appellant reiterated his *Brady* claims, argued that his trial counsel was

- 9 -

ineffective for failing to obtain medical and blood-spatter expert witnesses, and claimed that Attorney Link failed to assist Appellant in litigating his March 13, 2014 *pro se* Motion for an Evidentiary Hearing.[13]  ***See*** Response, 4/16/20, at 1-4 (unpaginated).   He also asserted that his direct appeal counsel, Attorney Mosser, was ineffective for failing to raise unspecified claims on direct appeal.  ***Id.*** at 3 (unpaginated).

**Standard of Review**

We review the denial of a PCRA Petition to determine whether the record supports the PCRA court's findings and whether its Order is otherwise free of legal error.  ***Commonwealth v. Fears***, 86 A.3d 795, 803 (Pa. 2014).  This Court grants great deference to the findings of the PCRA court if they are supported by the record.  ***Commonwealth v. Boyd***, 923 A.2d 513, 515 (Pa. Super. 2007).  We likewise give great deference to the PCRA court's credibility determinations.  ***Commonwealth v. Johnson***, 966 A.2d 523, 539 (Pa. 2009).  We give no such deference, however, to the court's legal conclusions.  ***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012).

**_Brady_ Violation**

"Under ***Brady***, the prosecution's failure to divulge exculpatory evidence is a violation of a defendant's Fourteenth Amendment due process rights.  To

---

[13] Appellant had not raised this claim in either his counselled PCRA Petition or Amended PCRA Petition; rather, he raised it for the first time in his response to counsel's ***Anders*** Brief.  ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").  Thus, we decline to address it.

establish a ***Brady*** violation, a defendant is required to demonstrate that exculpatory or impeaching evidence, favorable to the defense, was suppressed by the prosecution, to the prejudice of the defendant." ***Commonwealth v. Cam Ly***, 980 A.2d 61, 75 (Pa. 2009) (citation, wuotation marks, and brackets omitted). A defendant has the burden of proof to demonstrate that the Commonwealth willfully or inadvertently suppressed or withheld exculpatory or evidence. ***Commonwealth v. Weiss***, 986 A.2d 808-815 (Pa. 2009).

As to ***Brady*** claims advanced under the PCRA, a defendant must demonstrate that the alleged ***Brady*** violation "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***Commonwealth v. Copenhefer***, 719 A.2d 242, 259 (Pa. 1998) (citation omitted).

A defendant must also demonstrate that the withheld or suppressed evidence was material; a court must base its determination of materiality on considerations of the cumulative or collective effect of the suppressed evidence. ***Commonwealth v. Abdul-Salaam***, 42 A.3d 983, 984-85 (Pa. 2012). Evidence is material under ***Brady*** if there exists a reasonable probability that the outcome of the trial would have been different if the Commonwealth had disclosed the evidence. ***Commonwealth v. Natividad*** 211 A.3d 11, 26 (Pa. 2019). "[T]he mere possibility that an item of undisclosed information might have helped the defense, or might have

- 11 -

affected the outcome of the trial, does not establish materiality in the constitutional sense." ***Cam Ly***, 980 A.2d at 76 (citation omitted).

**Co-defendant's Alleged Cooperation Agreement**

With respect to Appellant's assertion that the Commonwealth withheld the existence of its cooperation agreement with co-defendant Baez, the record reflects that Baez testified at trial that he had entered into an open guilty plea and that an unidentified assistant district attorney told Baez that "they would go light on [his] sentence." N.T., 12/3/14, at 35, 51-52. Baez also testified at trial that neither the assistant district attorney prosecuting Appellant nor any other assistant district attorney made Baez any specific promises about his sentence.[14] ***Id.*** at 36, 52.

Attorney Link testified at Appellant's PCRA hearing that the Commonwealth provided him with cooperation agreements between the Commonwealth and Appellant's testifying co-defendant prior to trial. N.T., 4/17/19, at 24-25. He also testified that he did not subsequently become aware of any other plea agreements after Appellant's trial. ***Id.***

In light of the foregoing, the record supports the PCRA court's determination that this ***Brady*** claim lacks merit as any evidence pertaining to Baez's plea agreement was disclosed during the trial and made known to the trial court, which sat as the fact-finder, prior to its rendering a verdict.

---

[14] The prosecutor confirmed on the record at trial that "there isn't any [cooperation agreement]." N.T., 12/3/14, at 52.

Accordingly, Appellant did not establish by a preponderance of the evidence that the Commonwealth withheld this evidence from Appellant.

### Color Photos

Appellant also claimed that the Commonwealth withheld color photographs of the crime scene from him in violation of ***Brady***. Attorney Link testified that he requested color photographs of the crime scene from the Commonwealth, but that it did not provide them because, as was well known at the time, the Commonwealth did not have a color printer. Appellant has failed to demonstrate: (1) that the color photographs were exculpatory in a way that the photographs used by the Commonwealth were not; (2) that the Commonwealth willfully or inadvertently suppressed or withheld them; and (3) that this alleged suppression or withholding "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***See Copenhefer***, 719 A.2d at 259 (citation omitted). Thus, this claim fails.

## Ineffective Assistance of Counsel

Appellant has alleged myriad instances of ineffective assistance of his counsel. A PCRA petitioner who alleges ineffective assistance of counsel "will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the '[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence

could have taken place.'" ***Johnson***, 966 A.2d at 532 (quoting 42 Pa.C.S. § 9543(a)(2)(ii)).

We presume counsel is effective. ***Commonwealth v. Cox***, 983 A.2d 666, 678 (Pa. 2009). To overcome this presumption, a petitioner must establish that: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable basis for his act or omission; and (3) petitioner suffered actual prejudice. ***Commonwealth v. Treiber***, 121 A.3d 435, 445 (Pa. 2015). In order to establish prejudice, a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different." ***Commonwealth v. Koehler***, 36 A.3d 121, 132 (Pa. 2012) (citation omitted). A court will deny the claim if the petitioner fails to meet any one of these prongs. ***Commonwealth v. Jarosz***, 152 A.3d 344, 350 (Pa. Super. 2016).

In his counselled PCRA Petition, Appellant claimed that his trial counsel was ineffective because he: (1) failed to present expert testimony from a medical expert about the victim's injuries; (2) failed to present the testimony of a blood-spatter expert; (3) failed to object at trial to testimony from the victim's mother; (4) failed to present testimony from Melanie Brown; (5) failed to present testimony from Gina Abrams; (6) failed to present testimony from Appellant's federal parole officer Robert Henderson; (7) failed to file a motion for reconsideration of Appellant's sentence; and (8) failed to assert a ***Brady*** claim on direct appeal. Appellant also asserted in a *pro se* Amended Petition that his trial counsel was ineffective because: (1) he did not object to

testimony that Appellant injured the victim with a cinderblock; (2) the Commonwealth had failed to present a picture of the cinderblock in discovery or at trial; and (3) the police officer who stopped Appellant for investigation as Appellant walked away from the scene of the attack did not indicate that there was blood spatter on Appellant's clothing. The PCRA court denied Appellant PCRA relief because it concluded that none of these claims had arguable merit. We address each of these claims, in turn, and conclude that the record supports the PCRA court's finding.

**Failure to Present Certain Witness Testimony**

**Expert Witnesses**

To establish counsel's ineffectiveness for failing to present a potential witness, a PCRA petitioner must prove that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony was so prejudicial as to have denied the petitioner a fair trial. ***Johnson***, 966 A.2d at 536 (citation omitted). To demonstrate prejudice the petitioner "must show how the uncalled witness['s] testimony would have been beneficial under the circumstances of the case." ***Id.*** (citation omitted).

With respect to Appellant's assertion that Attorney Link should have provided testimony from expert medical and blood spatter witnesses, Appellant has neglected to provide any information regarding the identity of these proposed witnesses, whether such witnesses existed, whether they were

- 15 -

available to testify for the defense, whether they were known to trial counsel, and what the substance of their testimony would be. In light of the voluminous evidence presented at trial, Appellant has not established that the absence of this unspecified testimony from unspecified witnesses was so prejudicial to Appellant as to have denied him a fair trial. Moreover, Attorney Link testified at Appellant's PCRA hearing that he had a reasonable basis for deciding not to obtain expert testimony—his determinations that the victim's injuries were consistent with the medical records and other evidence and that no expert witnesses would credibly testify in Appellant's favor. *See*, *e.g.* N.T., 4/17/19, at 18, 26-29 (Attorney Link testified that he "had no basis to think that an expert would have testified that the injuries were not consistent with a cinderblock being dropped on someone's head."). Thus, the trial court did not err in concluding that these claims lacked merit.

**Lay Witnesses**

Appellant next claims that his counsel was ineffective for not presenting the testimony of Gina Abrams and Melanie Brown. *Anders* Brief at 52. The evidence of record indicates that these witnesses were available and willing to testify, and were known to Attorney Link. We, thus, consider only whether Attorney Link's decision not to present their testimony so prejudiced Appellant as to deny him a fair trial.

Appellant admits that he participated in the attack on the victim while wearing a grey sweatshirt, but denies dropping or throwing concrete or a cinderblock on the victim's head and denies that his grey sweatshirt was

- 16 -

spattered with blood as reported by the police officer who stopped Appellant after the attack. The affidavits of Ms. Abrams and Ms. Brown indicate that neither of them directly witnessed the attack on the victim and, therefore, neither of them could testify as to whether Appellant threw or dropped concrete on the victim's head. However, these witnesses did attest to seeing Appellant after the attack, and that he was not wearing a bloody sweatshirt.

Specifically, Ms. Abrams stated in her affidavit that when Appellant came to her home after the attack, he was wearing a white t-shirt. Accordingly, Ms. Abrams's statement was not relevant to the disputed issue of whether Appellant's grey sweatshirt was blood-spattered as he left the scene of the attack. Attorney Link's failure to present irrelevant testimony did not deprive Appellant of a fair trial and did not constitute ineffective assistance of counsel.

Ms. Brown provided in her affidavit that Appellant was wearing a grey sweat suit immediately after the attack and that she saw no blood "or anything pertaining to the incident" on it. Brown Affidavit, 7/5/18. Therefore, her testimony would have corroborated Appellant's claim that he did not have blood on his clothing after the attack. This testimony, however, conflicted with the testimony of a police officer who testified that he stopped Appellant for investigation because he "had blood all over his sweatshirt" and was walking hastily away from the unconscious victim.[15] N.T., 12/3/14, at 19-20.

---

[15] Another police officer prepared a "pedestrian investigation report" that is silent on the issue of whether Appellant's sweatshirt was bloody.

Despite the factual dispute about Appellant's sweatshirt, it is unlikely that this single issue would have altered the outcome of the proceedings where the Commonwealth presented the testimony of Appellant's co-defendants and other eyewitnesses, all of whom confirmed that Appellant had thrown "a brick" onto the victim's head. *See id.* at 47-48, 96, 102-04, 114-17, 129. Thus, notwithstanding the conflicting testimony regarding the presence of blood on Appellant sweatshirt, following our review of the totality of the proceedings we conclude that Appellant has failed to prove by a preponderance of the evidence that, but for counsel's decision not to offer Ms. Brown's testimony, the outcome of the case would have been different. Attorney Link's failure to offer the testimony of Ms. Brown does not, therefore, constitute ineffective assistance of counsel.

Appellant also asserts that his counsel was ineffective for failing to offer the testimony of his federal probation officer Henderson. *Anders* Brief at 58.

The record on this issue establishes that this witness existed, was likely available to testify for the defense through subpoena, and that Attorney Link knew of his existence. Officer Henderson voluntarily spoke with Attorney Link prior to trial; it is likely, therefore, that he would have been willing to testify at trial for the defense. Thus, we consider whether the absence of this witness's testimony was so prejudicial as to deprive Appellant of a fair trial.

Appellant did not provide an affidavit from Officer Henderson indicating what the substance of Officer Henderson's testimony would have been. Thus, any conclusion that his testimony would have changed the outcome of

Appellant's trial is speculative. Moreover, Attorney Link testified that he had a reasonable basis for deciding not to offer Officer Henderson's testimony—an interest in preventing the judge or fact-finder from learning about the fact that Appellant was on federal probation, when his prior conviction would otherwise not have been part of the record. **See** N.T., 4/17/19 at 19-20, 30-31. Appellant has, therefore, not demonstrated by a preponderance of the evidence that Attorney Link provided ineffective assistance by not offering the testimony of Officer Henderson.

**Failure to Object to Testimony**

Appellant claims that Attorney Link was ineffective for not objecting to the testimony of the victim's mother pertaining to the scope of the victim's injuries, asserting that it was "inflammatory, duplicative, and unduly prejudicial to him." **Anders** Brief at 47. Attorney Link testified at Appellant's PCRA hearing that, although the testimony was inflammatory, he made a strategic decision not to object to this testimony because he was trying the case before a judge and not a jury. He believed that the judge could compartmentalize the inflammatory aspect of the testimony and consider the evidence for its intended evidentiary purpose. Both the record and settled case law support Attorney Link's conclusion. **See Commonwealth v. Gribble**, 863 A.2d 455, 462 (Pa. 2004) (holding that a judge sitting as a fact-finder is presumed to disregard inadmissible evidence and consider only competent evidence).

- 19 -

In addition, the testimony to which Appellant asserts his counsel should have objected catalogued the litany of injuries that the victim's extensive medical records also documented, and which the trial court admitted as exhibits at trial. Accordingly, Appellant is unable to establish both that Attorney Link lacked a reasonable basis for the decision not to object to the mother's testimony and that its admission prejudiced him. The PCRA court, therefore, properly concluded that his claim lacks merit.

**Failure to File a Motion for Reconsideration of Sentence**

Next, Appellant claims that Attorney Link was ineffective for failing to file a Motion to Reconsider Appellant's sentence before filing a Notice of Appeal. *Anders* Brief at 48.

Although counsel is *per se* ineffective where he fails to perfect a timely appeal, "the failure to file post-sentence motions does not fall within the limited ambit of situations where a defendant alleging ineffective assistance of counsel need not prove prejudice to obtain relief." ***Commonwealth v. Liston***, 977 A.2d 1089, 1092 (Pa. 2009) (citation omitted). Stated another way, Appellant must demonstrate that Attorney Link's failure to file a Post-Sentence Motion prejudiced him. We conclude that Appellant failed to demonstrate such prejudice.

Instantly, the court sentenced Appellant to a standard range 20-40 year sentence for his Attempted Murder conviction and a consecutive aggravated range 10-20 year sentence for his Conspiracy conviction. At sentencing, the court indicated that it considered, *inter alia*, the presentence investigation

report, Appellant's prior record score, the Sentencing Guidelines, victim impact testimony, Appellant's allocution, the nature of the crime, its impact on the victim, Appellant's acceptance of responsibility (or lack thereof), Appellant's remorse (or lack thereof), and prior attempts to rehabilitate Appellant. N.T., 3/17/15, at 30-33. Because the sentences imposed by the court were legal, any challenge to Appellant's sentence would only challenge the discretionary aspects of his sentence. By dismissing this particular claim of ineffectiveness of counsel, the PCRA court, which presided as the sentencing court, indicated that it would not have been inclined to reconsider Appellant's sentence had his counsel challenged its discretionary aspects.

Although the failure to file a Motion to Reconsider his sentence results in waiver of any challenge on direct appeal to the discretionary aspects of a defendant's sentence, Appellant is likewise not entitled to relief on this basis. In order to obtain appellate review of a claim challenging the discretionary aspects of sentence, a defendant must demonstrate that there is a substantial question as to the appropriateness of his sentence under the Sentencing Code. Pa.R.A.P. 2119(f); **Commonwealth v. Hyland**, 875 A.2d 1175, 1183 (Pa. Super. 2005). A substantial question exists when an appellant advances a colorable argument that the sentencing court's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) "contrary to the fundamental norms which underlie the sentencing process." **Id.** (citations omitted). Appellant has not established that his sentence is inconsistent with the Sentencing Code or contrary to fundamental sentencing

norms. Thus, any challenge to the discretionary aspects of his sentence on direct appeal would not have garnered him relief. We conclude, therefore, that the instant facts do not establish that, but for counsel's failure to file a Motion for Reconsideration of Appellant's sentence prior to filing a timely Notice of Appeal, Appellant would have received a lesser sentence.

**Failure to Assert a *Brady* Claim**

With respect to Appellant's claim that his counsel was ineffective for not pursing *Brady* claims on direct appeal, as discussed above, Appellant's *Brady* claims lack merit. Accordingly, his counsel could not be ineffective for not pursuing claims without arguable merit.

**<u>Failure to Object to the Absence of the Word "Alleged"</u>**

In his *pro se* Amended Petition, Appellant asserts that his trial counsel was ineffective for failing to demand that witnesses refer to the weapon used by Appellant as an "alleged" cinderblock. ***Anders*** Brief at 60. The Notes of Testimony reflect that witnesses variously referred to Appellant's weapon as a cinderblock, a piece of cement, a piece of concrete, a brick, a piece of curb, and a piece of sidewalk. The witnesses did not uniformly refer to the weapon as a cinderblock. Accordingly, it is unlikely that the court would have granted an objection to any witness failing to insert the qualifier before using the word "cinderblock" had counsel raised one. Because this issue lacks arguable merit, the PCRA court properly concluded that this claim of ineffectiveness was also meritless.

**Failure of the Commonwealth to Produce a Picture of the Cinderblock in Discovery or at Trial**

Appellant also claimed in his *pro se* Amended Petition that the Commonwealth failed to produce in discovery or at trial a picture of the cinderblock that he used as a weapon. This assertion is factually incorrect. The Commonwealth introduced a picture of that item into evidence at trial. **See** Commonwealth Exhibit C-2C, N.T., 12/3/14, at 9-12.

**The Pedestrian Investigation Report Did Not Reflect that Appellant Had Blood on His Sweatshirt**

Appellant last asserts that the police officer who stopped him for investigation as he walked away from the crime scene did not indicate that Appellant had blood on his sweatshirt. This assertion is factually correct. **See** Commonwealth Exhibit C-4. However, Appellant has not alleged any error on the part of the PCRA court with respect to this factual assertion. Moreover, to the extent that Appellant asks that either the PCRA court or this Court reweigh this piece of evidence or the officer's testimony, there is no provision of the PCRA that would afford him this relief.

Order affirmed. Application to Withdraw as Counsel granted.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 8/19/2020*