**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 800 CAP |
| | : | |
| Appellee | : | Appeal from the Order entered on |
| | : | September 19, 2022, in the Court |
| | : | of Common Pleas, Berks County, |
| v. | : | Criminal Division at No. CP-06-CR- |
| | : | 0004453-2006. |
| | : | |
| CLETUS C. RIVERA, | : | SUBMITTED: January 29, 2024 |
| | : | |
| Appellant | : | |

**OPINION**

JUSTICE BROBSON                                                          DECIDED: October 8, 2024

Appellant Cletus Rivera (Rivera) received a sentence of death after a jury convicted him of the first-degree murder of Reading Police Officer Scott Wertz (Officer Wertz). In 2009, this Court affirmed Rivera's judgment of sentence, *Commonwealth v. Rivera*, 983 A.2d 1211 (Pa. 2009) (*Rivera I*), and, on May 17, 2010, the United States Supreme Court denied his petition for a writ of certiorari, *Rivera v. Pennsylvania*, 560 U.S. 909 (2010). Rivera then unsuccessfully sought collateral relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa. C.S. §§ 9541-9546. *Commonwealth v. Rivera*, 108 A.3d 779 (Pa. 2014) (*Rivera II*).

On July 28, 2017, Rivera filed a second PCRA petition in the Court of Common Pleas of Berks County (PCRA court). The PCRA court ultimately denied the petition on

the merits of his claims, and Rivera timely filed a notice of appeal.[1]  After careful review,

we vacate the PCRA court's order and remand the matter with instructions.

## I.  BACKGROUND

This Court previously summarized the background underlying this matter as

follows:

> [I]n the early morning hours of August 6, 2006, [Officer] Wertz and [Reading Police Officer] Malcom Eddinger [(Officer Eddinger)] were working as plainclothes police officers for the Reading Police Department when they noticed a large crowd forming in a parking lot adjacent to the street.  The officers received a radio broadcast a few moments later, indicating there was an altercation at that location.  The officers then heard what they believed to be a firecracker or small caliber gunshot.  While they initially remained in their unmarked vehicle waiting for uniformed officers to arrive, the officers exited after they heard three or four gunshots fired from a large caliber gun.
>
> Believing the shooter was a man in a blue polo shirt, later identified as [Rivera], Officer Wertz began to follow him.  Officer Eddinger joined the pursuit.  At one point, Officer Wertz stood face-to-face with [Rivera] for a few seconds, leading Officer Eddinger to believe that the two men exchanged words.  [Rivera] continued to run, and Officer Wertz gave chase.  Notably, he never drew his weapon.  Officer Eddinger followed behind them in the middle of the street.  He did not hear Officer Wertz direct [Rivera] to stop or identify himself as a police officer, but did see [Rivera] look over his left shoulder.  Immediately thereafter, Officer Eddinger heard two gunshots, and observed two muzzle flashes.  Both [Rivera] and Officer Wertz fell to the ground.  Officer Eddinger, who was approximately twenty feet away when [Rivera] fired the shots at Officer Wertz, apprehended [Rivera] who was lying on the street where he had fallen, and found a gun underneath him.  The location where the shooting occurred was approximately forty yards away from the large crowd [that] had previously gathered.  Four spent shells fired from [Rivera's] gun were recovered from the crime scene.
>
> Officer Wertz was pronounced dead shortly thereafter.  His gun was found strapped inside his holster, which was attached to his belt, and his badge was found in his police vehicle.  [A] baton used in law enforcement was also found in close proximity to where Officer Wertz's body lay.  An autopsy identified the cause of death as two gunshot wounds, one

---

[1] A final order under the PCRA, in a case in which the death penalty has been imposed, is directly appealable to this Court.  42 Pa. C.S. § 9546(d).

penetrating the left side of Officer Wertz's chest, and the other striking him in the area below the pelvic diaphragm. Chemical testing revealed that the shot to the chest had been fired from approximately four feet away, while the other shot had been fired when the muzzle of the weapon was either touching or was within three inches of Officer Wertz's clothing. The [Commonwealth of Pennsylvania's (Commonwealth)] theory was that this forensic evidence demonstrated that [Rivera] first shot Officer Wertz in the chest, which caused him to fall toward [Rivera], who then fired a second time. [The Commonwealth charged Rivera with, *inter alia*, first-degree murder and filed a notice of its intention to seek the death penalty.]

At trial, [Rivera] was represented by Attorneys Jay Nigrini and Richard Reynolds. The Commonwealth's primary witness was Officer Eddinger, who testified regarding the parking lot surveillance, the subsequent chase of [Rivera], the shooting of Officer Wertz, and [Rivera's] apprehension. The Commonwealth also presented the testimony of jailhouse informant, Jason Ott [(Ott)],[2] who provided prison officials with a written statement that [Rivera] confessed to him in prison that he shot a police officer and would "get away with it" because there were fifty or sixty people at the scene. Although not included in his written statement to police, Ott further testified at trial that [Rivera] told him someone shouted that cops were coming; thereby suggesting that [Rivera] may have known that the man chasing him was a police officer.

Prior to Ott's testimony, [Rivera] had executed a written waiver of conflict of interest and engaged in an oral colloquy, acknowledging that . . . Attorney Nigrini[] had previously represented Ott in criminal proceedings. Due to the purported conflict of interest, [Rivera's] co-counsel, Attorney Reynolds, cross-examined Ott at trial, bringing to light that [Ott] was imprisoned due to a parole violation involving false reports to police. Attorney Reynolds also elicited testimony suggesting that Ott's parole violation case had been continued several times due to [Rivera's] upcoming trial, although Ott denied having any plea agreement with the Commonwealth and affirmatively stated that he received no benefit in exchange for his testimony against [Rivera].

[Rivera] testified on his own behalf, alleging that he had fired his weapon in self-defense. According to [Rivera], an unidentified Hispanic man had pointed a gun toward him and his friends while in the parking lot, which led [Rivera] to fire his weapon in the air four or five times to "break everything up." [Rivera] indicated that, moments later a different man (Officer Wertz) ran toward him, who never identified himself as a police officer and did not direct [Rivera] to stop. [Rivera] explained that he thought the man chasing him may have been connected to the armed Hispanic man

---

[2] Ott is the focus of Rivera's second PCRA petition.

and believed that the man intended to shoot him. Hence, [Rivera] fired his weapon at the man. [Rivera] stated that he learned that the man was a police officer only after he shot him when he heard someone say "police officer down." On cross-examination, [Rivera] admitted he had no license to carry a gun, that he had stolen the murder weapon, that he intended to cause serious bodily injury or death to the man chasing him, and that there was nothing preventing him from continuing to run from his pursuer.

*Rivera II*, 108 A.3d at 784-86 (footnote omitted).

After the presentation of the guilt-phase evidence, the trial court instructed the jury on, *inter alia*, various degrees of homicide and the elements of self-defense. Relevant to the instant matter, the jury convicted Rivera of first-degree murder. Following the penalty phase of Rivera's trial, the jury decided that the following aggravating circumstances applied: (1) the victim was a peace officer in the performance of his duties, 42 Pa. C.S. § 9711(d)(1) (providing that aggravating circumstances include when victim was, among other things, peace officer who was killed in performance of his duties); and (2) the defendant created a grave risk of death to another person in addition to the victim of the offense, 42 Pa. C.S. § 9711(d)(7) (explaining that aggravating circumstances include when, in commission of offense, defendant knowingly created grave risk of death to another person in addition to victim). The jury also determined that Rivera proved the requirements for the "catchall" mitigator concerning his character and record, 42 Pa. C.S. § 9711(e)(8) (providing that mitigating circumstances include "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense"). Concluding that the aggravating circumstances outweighed the mitigating circumstance, the jury recommended the imposition of the death penalty. On August 19, 2008, the trial court imposed upon Rivera a sentence of death.

This Court affirmed Rivera's judgment of sentence. *Rivera I*. Relevant to the appeal currently before the Court, we concluded that the Commonwealth presented sufficient evidence to disprove Rivera's claim of self-defense. Our analysis was guided

by Section 505 of Crimes Code, 18 Pa. C.S. § 505, which outlines when the use of force is justifiable for self-defense.[3]  We explained:

> Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, as we must, we find that the Commonwealth disproved [Rivera's] claim of self-defense beyond a reasonable doubt.  Specifically, the Commonwealth presented undisputed evidence that Officer Wertz did not draw his weapon during his pursuit of [Rivera] and, thus, never exerted "unlawful force" under Section 505(a).  Accordingly, [Rivera] was not justified in responding to the officer's pursuit by employing deadly force.  Under the Commonwealth's version of the facts, which the jury accepted, Officer Wertz chased [Rivera] after [Rivera] had fired his weapon in a crowded parking lot, and [Rivera] reacted by fatally shooting him.  While the jury was free to believe [Rivera's] testimony relating to self-defense, *i.e.*, that he reasonably believed Officer Wertz had drawn a weapon and was

---

[3] Section 505 provides, in pertinent part, as follows:

(a) Use of force justifiable for protection of the person.--The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

(b) Limitations on justifying necessity for use of force.--

 . . . .

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa. C.S. § 505.

going to kill him, the jury did not do so here. Accordingly, [Rivera's] use of force was not justified pursuant to Section 505(a).[10]

> [10] We further note that, even if [Rivera] reasonably believed that Officer Wertz was pursuing him with a deadly weapon, the use of force employed by [Rivera] was excessive in that he shot Officer Wertz a second time at close range after already having shot him in the chest, causing the victim to fall forward.

Turning to subsection (b)(2) of Section 505, the evidence, when viewed in the proper light, demonstrates that [Rivera] was the aggressor in using deadly force as it is clear that his firing of a gun in the crowded parking lot was the catalyst for the tragic chain of events that followed. [Rivera], himself, testified that he had fired his weapon in the parking lot, that the chase by Officer Wertz followed thereafter, and that [Rivera] proceeded to fire two shots, which fatally wounded Officer Wertz. Thus, the Commonwealth demonstrated beyond a reasonable doubt that [Rivera,] "with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter." 18 Pa. C.S. § 505(b)(2)(i). As noted, the record demonstrates that Officer Wertz did nothing more than chase an individual who had illegally fired a weapon and had endangered individuals who had gathered in a populated area.

Finally, the evidence demonstrates that [Rivera] could have avoided the use of force by retreating with complete safety pursuant to Section 505(b)(2)(ii), as [Rivera] conceded in his testimony that nothing prevented him from continuing to run from Officer Wertz without using deadly force.

Accordingly, we have little difficulty concluding that the evidence was sufficient to demonstrate that [Rivera] unlawfully killed Officer Wertz, and that such killing was willful, deliberate, and premeditated. Having satisfied the elements of first degree murder, we further conclude that the Commonwealth presented sufficient evidence to disprove [Rivera's] claim of self-defense beyond a reasonable doubt.

*Rivera I*, 983 A.2d at 1221-23 (most citations omitted). After this Court affirmed Rivera's judgment of sentence, he sought a writ of certiorari from the United States Supreme Court, which the High Court denied on May 17, 2010. *Rivera v. Pennsylvania*, 560 U.S. 909 (2010).

Rivera timely filed a PCRA petition. Important to the appeal currently before this Court, Rivera raised several core issues concerning Ott: (1) whether his trial counsel

rendered ineffective assistance by failing to cross-examine Ott effectively; (2) whether his trial counsel labored under a conflict of interest; (3) whether the Commonwealth violated his right to due process and the United States Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose exculpatory impeachment evidence concerning Ott or, in the alternative, whether his trial counsel were ineffective for failing to discover and utilize this evidence to impeach Ott; and (4) whether the Commonwealth improperly elicited testimony from Ott that the Commonwealth knew to be false.

By way of background, Ott and Rivera shared a prison cell shortly after Rivera shot Officer Wertz. Within a day of meeting Rivera, Ott provided prison officials with a written statement, indicating that Rivera: (1) confessed to shooting a police officer; (2) stated that 50 to 60 persons witnessed the shooting and, therefore, that he would "get away with it;" and (3) washed his hands when he arrived at the prison to eliminate gun residue. It also is important to note that one of Rivera's trial counsel, Attorney Nigrini, represented Ott when Ott gave his written statement to prison officials. Attorney Nigrini informed the trial court of this conflict of interest and, at the trial court's recommendation, withdrew as Ott's counsel. Rivera, both orally and in writing, waived the conflict of interest and expressed that he wanted Attorney Nigrini to continue as his counsel.

At trial, Ott testified on direct examination about the contents of the statement he provided to prison officials. He stated that he had not been promised any benefit in exchange for his testimony against Rivera. Rivera's other counsel, Attorney Reynolds, cross-examined Ott given that Attorney Nigrini had previously represented him. That cross-examination revealed the following:

> Ott was in prison for parole violations involving the making of false reports to police; Ott's parole violation cases had been continued several times while [Rivera's] trial was pending, suggesting that Ott would receive a reduced sentence in his parole violation proceedings if he cooperated in [Rivera's] prosecution; [Rivera] never told Ott that [Rivera] knew the man chasing him was a police officer; and [Rivera] indicated to Ott that he

washed his hands upon arriving at the prison because his hands were bleeding as he had lost a fingernail in the scuffle.

*Rivera II*, 108 A.3d at 797-98 (citations omitted). "On redirect examination, Ott testified that [Rivera] also told him that 'someone had yelled cops were coming' at the scene of the fight that preceded the shooting." *Id.* at 798 (citation omitted). In questioning Ott again, Attorney Reynolds highlighted that Ott did not include this alleged fact in the written statement that he gave to prison officials, "suggest[ing] that Ott 'came up' with that fact after speaking with police." *Id.* (citation omitted).

Turning to the relevant issues in his first PCRA petition, Rivera contended that his trial counsel provided ineffective assistance by failing to impeach Ott with evidence establishing that: (1) Ott wanted to get out of prison; (2) Attorney Nigrini filed a petition requesting Ott's early release from prison; (3) Ott was released early from prison as a result of his cooperation in Rivera's prosecution; and (4) an informal condition of Ott's parole was that he was required to continue to cooperate in Rivera's case.[4] Because Ott testified at Rivera's trial that Rivera confessed to shooting a police officer, Rivera insisted that Ott's credibility was critical as he contradicted Rivera's testimony that he was unaware that Officer Wertz was a law enforcement officer when he shot him. Rivera believed that Ott's testimony ran contrary to his self-defense claim.

The PCRA court denied relief on this claim, and the Court in *Rivera II* held that the PCRA court's ruling was supported by the record and free from legal error. Stated succinctly, the Court concluded that Attorney Reynolds effectively cross-examined Ott. Among other things, Attorney Reynolds attacked Ott's credibility by pointing out "his

---

[4] To overcome the presumption that counsel provided effective assistance, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, "that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different." *Commonwealth v. Cooper*, 941 A.2d 655, 664 (Pa. 2007).

pending parole violations alleging false reporting to police, which had been repeatedly and inexplicably continued pending [Rivera's] trial." *Id.* at 799. In this regard, we observed that Attorney Reynolds "indisputably suggested to the jury that Ott sought a benefit in exchange for his testimony against [Rivera]." *Id.*

We further noted that Attorney Reynolds "refuted the precise point that [Rivera] fault[ed] him for failing to negate, *i.e.*, that [Rivera] was aware that the man chasing him was a policeman." *Id.* We reported that Attorney Reynolds' questioning of Ott "led Ott to acknowledge specifically that [Rivera] never indicated that he knew his pursuer was a police officer at the moment he shot him." *Id.* This Court concluded that "it was reasonable for trial counsel to pursue the impeachment tactic employed, rather than attempt to impeach Ott's credibility with a purported agreement between Ott and the Commonwealth, which Ott had refuted moments before on direct examination, and which the PCRA court discounted as mere speculation."[5] *Id.* (footnotes omitted).

Rivera also argued that, because Attorney Nigrini had previously represented Ott, "Attorney Reynolds labored under a conflict of interest that caused him to cross-examine

---

[5] In a footnote, this Court reported that Rivera presented the PCRA court with documents suggesting that the Commonwealth and Ott entered into an agreement concerning Rivera's prosecution. Rivera primarily relied on a pretrial letter from the Berks County District Attorney that was addressed to Rivera's trial counsel. That letter was dated October 11, 2006, and stated that the probation department and an assistant district attorney had agreed that an informal condition of Ott's probation was his cooperation in Rivera's prosecution. This Court concluded that the record supported the "PCRA court's finding that [Rivera's] evidentiary proffer in support of the existence of an agreement [was] speculative." *Rivera II*, 108 A.3d at 799 n.13. In support, we expressed that, because Attorney Reynolds effectively cross-examined Ott about his "bias toward the Commonwealth, there is not a reasonable probability that the outcome of [Rivera's] trial would have been different had Attorney Reynolds attempted to impeach Ott's credibility further in accord with the same rationale, but employing the letter requiring [Ott's] cooperation as a parole condition." *Id.*

Ott in an ineffective manner."[6] *Id.* at 800. The PCRA court concluded that this argument lacked merit, and the Court in *Rivera II*, characterizing Rivera's contention as "circular," found that the PCRA court's conclusion was supported by the record and free from legal error. *Id.* Among other things, the Court determined that Rivera failed to establish that Attorney Reynolds suffered a conflict of interest relative to Attorney Nigrini's previous representation of Ott.

Next, Rivera submitted that the Commonwealth violated his constitutional right to due process and the United States Supreme Court's decision in *Brady* "by failing to disclose exculpatory impeachment evidence relating to Ott, such as Ott's criminal record, the consideration he received in exchange for his testimony against [Rivera], his expectations of leniency in the future, his status as a cooperator in other cases, and Ott's diagnosis of bipolar disorder." *Id.* at 801. Yet, because Rivera conceded that all of this evidence was contained either in Ott's court files or the transcripts from his court appearances, the *Rivera II* Court summarily deemed the claim to be meritless. We observed, however, that Rivera "transform[ed] his *Brady* claim into one alleging the ineffectiveness of trial counsel for failing to discover the aforementioned evidence for purposes of impeaching Ott on cross-examination." *Id.* This Court held that Rivera was not entitled to relief, as he conceded "the inadequacy of his *Brady* claim[] and has failed to demonstrate the requisite prejudice for his ineffectiveness claim as we have repeatedly noted that Attorney Reynolds conducted an effective cross-examination of Ott[] and informed the jury of the material information necessary to impeach his testimony." *Id.* at 802.

---

[6] To be clear, in his initial PCRA litigation, the focus of Rivera's conflict claim was Attorney Nigrini's relationship with Ott. (*See, e.g.*, Rivera's Brief in *Rivera II* at 69 ("[A]s a result of Nigrini's representation of Ott while Ott was cooperating with the Commonwealth, Nigrini labored under a conflict of interest that adversely affected his representation of [Rivera].").

Rivera's final Ott-related issue concerned whether the Commonwealth knowingly presented false evidence to the jury in the form of Ott's testimony "that he had never been promised anything in exchange for making his initial statement to prison authorities[] and that he never received any benefit from cooperating in [Rivera's] prosecution." *Id.* We held that Rivera waived this claim because he could have, but did not, raise it on direct appeal. *See* 42 Pa. C.S. § 9544(b) (explaining that issue is waived if "petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post[-]conviction proceeding"). In the alternative, the Court stated that the claim failed "for lack of merit as the PCRA court's finding that no agreement existed is supported by the record." *Rivera II*, 108 A.3d at 802.

The *Rivera II* Court's disposition of an issue that Rivera raised regarding an aggravating factor also is implicated in the current appeal. Rivera argued that trial counsel were ineffective for failing to quash the aggravating circumstance found in Section 9711(d)(1) of the Judicial Code, which, as noted above, allows the Commonwealth to prove that a murder conviction is aggravated if the victim was a peace officer in the performance of his duties. 42 Pa. C.S. § 9711(d)(1). The focus of Rivera's claim was that, to establish this aggravator, the Commonwealth was required to prove that Rivera knew that Officer Wertz was a law enforcement officer at the time that Rivera shot him. The PCRA court rejected this claim, and this Court concluded that the PCRA court's decision was supported by the record and devoid of error. In reaching this conclusion, we determined that this aggravating circumstance does not include a *mens rea* element. In other words, to establish the applicability of Section 9711(d)(1), the plain language of this statute did not require the Commonwealth to prove that Rivera knew when he shot Officer Wertz that he was a law enforcement officer performing his duties. We ultimately affirmed the PCRA court's order dismissing Rivera's first PCRA petition.

## II.  SECOND PCRA PETITION

On July 28, 2017, Rivera filed his second PCRA petition.  In the petition, Rivera explained that, in January 2015, he filed a petition for a writ of *habeas corpus* in the United States District Court for the Eastern District of Pennsylvania (district court).  According to Rivera, after his counsel reviewed the Commonwealth's initial discovery disclosure, he filed a motion to compel the production of Ott's Berks County probation and jail records.  The district court granted the motion, and the Commonwealth provided Rivera with the requested items.

The petition further stated that the discovery process in the district court resulted in newly disclosed material in the form of Ott's jail and probation records.  Rivera asserted that information in those records supports the claims that he raised regarding Ott in *Rivera II*.  Rivera expressed that "the new materials verify the existence of the agreement between Ott and the Commonwealth which [Attorney] Nigrini brokered on Ott's behalf." (Second PCRA Petition, 7/28/2017, at 9, ¶23.)  Rivera shared that the basic terms of the agreement were that, in exchange for Ott's cooperation with the Commonwealth in Rivera's trial, Ott "received an early release; Ott's continued cooperation with the Commonwealth was established as a special condition of his probation to ensure that he held up his end of the bargain; and, but for his cooperation in [Rivera's] case, Ott would have stayed in prison."  (*Id.* at 9-10, ¶23.)

Rivera further averred that the federal discovery material revealed that Ott had cooperated with the Commonwealth in other cases and that he had previously worked as an informant for Berks County law enforcement.  In addition, Rivera claimed that Ott violated his probation more than the Commonwealth previously acknowledged and that the newly discovered evidence confirmed that Ott's continued cooperation with the Commonwealth in Rivera's case resulted in a negotiated plea agreement for one year of

probation regarding his stalking and false reports charges, which remained pending until Ott testified at Rivera's trial.

The core issues that Rivera raised in his second PCRA petition were largely the same as the Ott-related issues that he presented in his initial PCRA petition. First, he contended that the Commonwealth violated *Brady* and its progeny by failing to disclose exculpatory impeachment evidence concerning Ott. While Rivera acknowledged that he raised this claim in *Rivera II*, he insisted that the newly disclosed evidence demonstrates with certainty that the Commonwealth failed to disclose impeachment evidence related to Ott.[7] Assuming *arguendo* that the PCRA court would determine that Rivera's trial counsel already possessed the evidence at issue or should have discovered it, Rivera argued that his trial counsel were ineffective for failing to acquire the evidence and utilize it to impeach Ott at Rivera's trial.

Rivera also raised the issue of whether the Commonwealth violated several of his federal constitutional rights when it knowingly elicited false testimony from Ott at Rivera's trial. According to Rivera, the Commonwealth knew that Ott was lying when he testified that he had not been promised anything for his testimony against Rivera. Yet, the Commonwealth elicited this testimony and did not correct it.[8] Additionally, Rivera presented an independent and discrete claim that his trial counsel were ineffective for failing to effectively impeach Ott at Rivera's trial. Lastly, Rivera contended that he was entitled to relief from his conviction and sentence because Attorney Nigrini labored under a conflict of interest that negatively impacted his representation of Rivera at trial and on direct appeal from his judgment of sentence.

---

[7] As discussed in more detail below, Rivera also maintained that the new evidence undermined confidence in his death sentence.

[8] To the extent that the PCRA court were to conclude that his prior counsel should have raised this issue earlier, Rivera alleged that his prior counsel were ineffective in this regard.

As to the timeliness of his second PCRA petition, which is critical to our disposition of this appeal, Rivera pled that the petition meets the requirements for two exceptions to the PCRA's one-year jurisdictional time bar for filing such a petition. Specifically, he posited that the petition meets Sections 9545(b)(1)(i) (*i.e.*, the governmental interference exception) and 9545(b)(1)(ii) (*i.e.*, the newly discovered facts exception) of the PCRA, which provide as follows:

> (b) Time for filing petition.--
>
> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States; [or]
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]

42 Pa. C.S. § 9545(b)(1)(i) and (ii). In support of his position that his petition meets the requirements of these provisions, Rivera's averments focused on the Commonwealth's failure to provide him with *Brady* material regarding Ott and on Rivera's recent discovery of that information.

Rivera also averred that his issues were not subject to the PCRA's bar against raising allegations of error that were previously litigated. In this regard, the PCRA requires petitioners to plead and prove that an allegation of error has not been previously litigated or waived. 42 Pa. C.S. § 9543(a)(3). For purposes of the PCRA, an issue has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue; or . . . it has been raised

and decided in a proceeding collaterally attacking the conviction or sentence." 42 Pa. C.S. § 9544(a)(2) and (3). Invoking language from *Commonwealth v. Miller*, 746 A.2d 592 (Pa. 2000), Rivera asserted that this Court has "held that claims are reviewable when the petitioner does not rely on previously litigated evidence." (Second PCRA Petition, 7/28/2017, at 14, ¶35.) Rivera further submitted that, "even previously litigated legal theories are cognizable if they are presented as claims that the manner in which counsel presented the claims was ineffective." (*Id.* (citing *Commonwealth v. Collins*, 888 A.2d 564 (Pa. 2005)).)[9]

Following procedural steps that included multiple continuances and the matter being reassigned several times to different judges, the PCRA court held a hearing from June 23-25, 2021. Rivera called several witnesses, including Attorney Nigrini, and the Commonwealth introduced testimony from three witnesses, including Brian McDonnell, who was the Berks County assistant district attorney who allegedly entered into an agreement with Ott regarding Ott's cooperation in Rivera's prosecution. After the hearing, the parties submitted memoranda in support of their positions, and, on June 7, 2022, the PCRA court entertained oral argument. On September 19, 2022, the PCRA court issued an opinion and order denying Rivera's second PCRA petition.

The PCRA court's opinion began with a summary of the background underlying the matter. (PCRA Court Opinion, 9/19/2022, at 1-15.) Regarding its analysis of Rivera's second PCRA petition, the PCRA court initially purported to examine whether it had jurisdiction to consider the merits of Rivera's claims. The court observed that the "timeliness requirements of the PCRA are jurisdictional in nature, and the court cannot

---

[9] On February 24, 2020, the PCRA court granted Rivera's request to amend his second PCRA petition. The amended petition added sources of information regarding Ott's criminal background. The amended petition did not further address the PCRA's bar against relitigating issues, and, while it did discuss the timeliness of the petition, the amended petition's jurisdictional averments largely overlapped with those provided in the original second PCRA petition.

address the merits of an untimely petition." (*Id.* at 15.) After quoting Section 9545(b) of the PCRA and summarizing the parties' arguments, the PCRA court simply asserted: "Because the Commonwealth concedes the present petition's timeliness via the newly discovered evidence exception to the PCRA time bar,[10] there is no need to review

---

[10] In its post-hearing memorandum, the Commonwealth stated as follows:

> The Commonwealth concedes that Rivera's second PCRA petition meets the newly discovered fact exception to the PCRA time bar. The Commonwealth recognizes that Rivera obtained information about Ott pursuant to the federal discovery order that he likely could not have obtained via the exercise of due diligence. Rivera pleaded those facts within the timeframe of 42 Pa. C.S.[] § 9545(b)(1)(ii), (b)(2). Rivera's second PCRA petition is thus timely filed.

(Commonwealth's Post-Hearing Memorandum, 1/21/2022, at 14 (footnote omitted).)

Although the Commonwealth conceded that Rivera pled his claims in a timeframe that met the requisites of Sections 9545(b)(1) and (2) of the PCRA, it appears that Rivera addressed Section 9545(b)(2) for the first time in his post-hearing memorandum. (Rivera's Post-Hearing Memorandum, 10/11/2021, at 17-18.) When Rivera filed his second PCRA petition, Section 9545(b)(2) of the PCRA provided: "Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented." 42 Pa. C.S. § 9545(b)(2) (amended by Act of Oct. 24, 2018, P.L. 894, No. 146, § 2). This provision now requires any petition invoking a timeliness exception under Section 9545(b)(1) to be filed within one year of the date that the claim could have been presented.

In its opinion, the PCRA court acknowledged Rivera's post-hearing argument as follows:

> [Rivera] points out that he filed his 2017 petition within 60 days from "the date the claim could have been presented" as § 9545(b)(2) then read. The petition was filed on July 28, 2017, 46 days after the Commonwealth mailed the records ordered by the federal court. The 2020 amendment to [Rivera's] PCRA petition was based upon the documents obtained pursuant to the federal court's July 21, 2016[] discovery order, the last of which were provided on February 14, 2020. [Rivera] filed his amendment on February 20, 2020, which was within one year of receiving these materials.

(PCRA Court Opinion, 9/19/2022, at 17). It is unclear whether the PCRA court simply summarized Rivera's argument or summarized and addressed it.

[Rivera's] alternate theory, the governmental interference exception. We conclude we have jurisdiction in this case." (*Id.* at 17.)

Next, the PCRA court agreed with Rivera that, although he litigated his issues previously in *Rivera II*, the issues are supported by new evidence and, therefore, are not subject to the PCRA's bar against raising allegations of error that were previously litigated. More specifically, Rivera argued that, "[w]hen a post-conviction 'claim does not rest *solely* upon previously litigated evidence,' the reviewing court will reach the merits of the claim." (Rivera's Post-Hearing Memorandum, 10/11/2021, at 18-19 (emphasis in original) (quoting *Miller*, 746 A.2d at 602 n.9).) As noted, the PCRA court concurred with Rivera on this point.

After the PCRA court expressed its view that Rivera's claims are not barred by the law-of-the-case doctrine,[11] the court observed that Rivera's first issue consisted of two parts: (1) whether the Commonwealth violated Rivera's due process rights under *Brady* by failing to disclose exculpatory impeachment evidence regarding Ott; and (2) whether Rivera's trial counsel were ineffective for failing to find and utilize this evidence. The PCRA court then explained: "There are three components of a true *Brady* violation. The evidence at issue must be favorable to the accused, either because it is exculpatory[] or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." (PCRA Court Opinion, 9/19/2022, at 31 (quoting *Stricker v. Greene*, 527 U.S. 263, 281-82 (1999)).) The PCRA court determined that "trial counsel's discovery requests in his omnibus pretrial motion were sufficient to require the production of the subject impeachment evidence, [and] that

---

[11] This Court has explained that the law-of-the-case doctrine "refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995).

the subject evidence was never received until after federal discovery was pursued, which the Commonwealth admits." (*Id.* at 32.)

The PCRA court, however, observed that, to establish a *Brady* violation, Rivera had to show that the evidence in question was favorable to him and material to his guilt or punishment. (*Id.* (citing *Smith v. Cain*, 565 U.S. 73, 75 (2012)).) Employing this principle, the PCRA court held that no *Brady* violation occurred in this matter because the newly discovered Ott-related evidence is not material to Rivera's guilt or punishment. More specifically, the court determined that, when Ott's testimony is considered within the context of the trial record as a whole, Ott was not a material witness.

The PCRA court explained that Rivera's *Brady* claim focused on Ott's testimony that Rivera confessed to shooting a police officer, undermining Rivera's claim of self-defense. The PCRA court pointed out, however, that the Court in *Rivera II* concluded that Attorney Reynolds' cross-examination of Ott "led Ott to acknowledge specifically that [Rivera] never indicated that he knew his pursuer was a police officer at the moment he shot him." (*Id.* at 39-40 (quoting *Rivera II*, 108 A.3d at 799).) Thus, in the PCRA court's view, Rivera's "self[-]defense claim was not disproven on the basis that [Rivera] knew the decedent was a police officer." (*Id.* at 40.)

Next, the PCRA court explained that the Court in *Rivera I* held that the Commonwealth disproved Rivera's claim of self-defense on other grounds, specifically

> by proving that [Rivera] was the aggressor in using deadly force by firing his gun in a crowded parking lot, being the catalyst causing the chain of events that followed[,] and by proving that [Rivera] could have avoided the use of force by retreating with complete safety because [Rivera] testified that nothing could have prevented him from continuing to run from Officer Wertz without using deadly force.

(*Id.* at 40-41 (citing *Rivera I*, 983 A.2d at 1222).) The court emphasized that these conclusions were not at all dependent on Ott's testimony.

The PCRA court reiterated that, when Ott's testimony is considered within the context of the entirety of Rivera's trial, Ott was not a critical witness for the Commonwealth. (*Id.* at 41 (collecting cases).) Indeed, the court characterized Ott as "nothing more than a jailhouse informant whose testimony was not the 'crux' of the Commonwealth's case." (*Id.* (citing *Commonwealth v. Weiss*, 986 A.2d 808, 816 (Pa. 2009)).) The PCRA court, therefore, found that the newly discovered evidence would not make it reasonably probable that the result of Rivera's trial would be different. Similarly, the court determined that the existence of the new evidence does not undermine confidence in the jury's verdict.

The PCRA court then referred to Rivera's contention that the newly discovered evidence undermined confidence in his sentence of death. In this regard, Rivera argued that a more thorough impeachment of Ott would have led the jury to give less weight to the aggravating circumstance that the victim was a law enforcement officer performing his duties. Rivera further suggested that a more comprehensive impeachment of Ott would have increased the weight of the catchall mitigator, as it would have provided further proof that Rivera shot Officer Wertz out of fear for his life. Thus, in Rivera's view, the newly discovered evidence could have led the jury to weigh the aggravating and mitigating factors in his favor, resulting in the jury refusing to sentence Rivera to death.

In addressing this argument, the PCRA court observed that the Court in *Rivera II* "held [that] the Commonwealth was not required to prove that [Rivera] knew his victim was a police officer at the time of the murder for this factor to apply, that there was no *mens rea* requirement." (*Id.* at 44 (citing *Rivera II*, 108 A.3d at 810).) As to Rivera's contention that the jury would have given more weight to the catchall mitigating factor, the PCRA court concluded that this belief amounted to pure speculation. The court then

turned its attention to Rivera's claim that his trial counsel were ineffective for failing to discover and properly utilize the newly discovered evidence.

The PCRA court concluded that this claim failed on the prejudice prong of the standard for assessing claims of ineffective assistance of counsel. In so doing, the PCRA court expressed that "Ott's testimony . . . was surplus, and was not needed to rebut [Rivera's] self-defense claim as the Commonwealth had otherwise established that [Rivera] was the aggressor and could have safely retreated while being pursued by Officer Wertz." (*Id.* at 48.) Consequently, in the court's view, trial counsels' alleged failure to better utilize the impeachment materials that they had or to obtain the federal discovery materials did not prejudice Rivera. According to the court, "[t]here is little to no possibility that a more extensive cross-examination of Ott would have resulted in a different outcome at trial." (*Id.*)

Moving forward, the PCRA court explained that Rivera's second issue alleged that the Commonwealth violated his federal rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution by knowingly eliciting and failing to correct Ott's false trial testimony.[12] In response, the PCRA court reported that, in *Napue v. Illinois*, 360 U.S. 264 (1959), "the United States Supreme Court held that a conviction obtained through false evidence, known to be such by the State violates the Fourteenth Amendment and this same result occurs when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." (*Id.* at 52.) The PCRA court further explained, however, that the discovery of false evidence requires a new trial only when it is material, *i.e.*, if there is any reasonable likelihood that the false evidence could have affected the jury's judgment. The PCRA court again reiterated that Ott was not a

---

[12] As noted above, in addition to arguing that the Commonwealth violated his constitutional rights by eliciting and failing to correct Ott's false testimony, Ott contended that his trial counsel were ineffective for failing to raise this issue at trial or on direct appeal from his judgment of sentence.

material witness in Rivera's trial.[13]  For these reasons, the PCRA court rejected the claims associated with Rivera's second issue.

Next, the PCRA court observed that, under his third issue, Rivera argued that his trial counsel rendered deficient stewardship by failing to discover and impeach Ott with the agreement that Ott had with the Commonwealth to cooperate in Rivera's trial in exchange for benefits regarding his probation/parole violations and new charges.  The PCRA court found that this claim did not satisfy the prejudice prong of the ineffective-assistance-of-counsel standard.  The court reasoned that cross-examining Ott with the terms of his agreement with the Commonwealth "would not have changed the reality that [Rivera] was the aggressor who had an opportunity to safely retreat when being pursued by Officer Wertz[,]" *i.e.*, the factors that the *Rivera I* Court cited in support of its conclusion that the Commonwealth disproved Rivera's claim of self-defense. (*Id.* at 58.)

Rivera's fourth issue focused on whether Attorney Nigrini labored under a conflict of interest that negatively impacted his ability to represent Rivera at trial and on appeal. Rivera contended that, when he waived Attorney Nigrini's conflict, he was unaware that Attorney Nigrini had brokered the agreement between Ott and the Commonwealth.  Thus, Rivera submitted that his waiver was not knowing and intelligent.  He further suggested

---

[13] The PCRA court supplemented this conclusion as follows:

> [A]ny agreement between Ott and the Commonwealth did not specify what position the Commonwealth would take at the time of sentencing nor did the prosecution argue to the jury that no promise had been made to Ott.  Also, the non-Ott evidence, in particular, the eyewitness testimony of Officer Eddinger and [Rivera's] own testimony, disproving his self-defense claims, was formidable and conclusive as to [Rivera's] guilt.

(PCRA Court Opinion, 9/19/2022, at 55-56.)

that the newly discovered materials brought to light the fact that Attorney Nigrini's representation of Rivera suffered as a result of counsel's representation of Ott.

The PCRA court concluded that the newly discovered evidence does not undermine the voluntariness of Rivera's waiver of Attorney Nigrini's conflict. The court cited Attorney Nigrini's PCRA hearing testimony that, when Rivera waived the conflict, Rivera was fully aware that Attorney Nigrini had represented Ott. The court reasoned that "[t]he fact that [Rivera] did not know the extent of the evidence that could have been used to impeach Ott when he signed the waiver does not detract from the voluntariness of the waiver." (*Id.* at 61.) The PCRA court also expressed that Rivera's rights were protected because, as part of the waiver process, it was agreed that Attorney Reynolds would cross-examine Ott. The PCRA court insisted that Rivera's "presentation of newly discovered Ott impeachment evidence does nothing to change the *Rivera II* [C]ourt's disposition of this claim." (*Id.* at 62.)

Under his final issue, Rivera alleged that the cumulative prejudice of the errors that he presented in his second PCRA petition demonstrated that he was denied his constitutional rights to a fair trial, due process, and a reliable sentencing hearing. The PCRA court disagreed and concluded that Rivera did not suffer any individual or cumulative prejudice. For these reasons, the PCRA court issued an order denying Rivera's second PCRA petition. Rivera timely filed a notice of appeal.

### III. ANALYSIS[14]

Rivera presents this Court with six issues.[15] We, however, do not reach the merits of those issues because the PCRA court provided deficient reasons for concluding that

---

[14] Generally speaking, our standard of review of an order dismissing or denying a PCRA petition is whether the findings of the PCRA court are supported by the record and free from legal error. *Commonwealth v. Wholaver*, 177 A.3d 136, 144 (Pa. 2018).

[15] Rivera raises the following issues in his brief:
(continued…)

Rivera pled and proved that his current claims meet the PCRA's newly discovered facts exception and the requirements of 42 Pa. C.S. 9545(b)(2).[16] More specifically, our summary of the PCRA court's opinion demonstrates that the court's jurisdictional analysis was conclusory. (*See supra* at 15-17 (summarizing portion of PCRA court's opinion that addressed timeliness of Rivera's second PCRA petition).) The court effectively ruled that

1. Did the Commonwealth violate [Rivera's] right to due process under *Brady* . . . and its progeny by failing to disclose impeachment evidence relating to . . . Ott; were trial counsel ineffective for failing to discover and/or present this evidence at trial or to raise this issue on direct appeal?

2. Did the Commonwealth violate [Rivera's] right to due process and a fair trial under *Napue* . . . and its progeny by presenting and allowing to go uncorrected testimony that the Commonwealth either knew or should have known was false; were prior counsel ineffective for failing to raise this issue at trial or on direct appeal?

3. Were trial counsel ineffective by failing to impeach . . . Ott with readily available evidence?

4. Was [Rivera's] right to conflict-free counsel violated because trial counsel labored under a conflict of interest that adversely affected his representation of [Rivera] and where [Rivera's] purported waiver of the conflict was not knowingly and intelligently made?

5. Is [Rivera] entitled to new guilt-innocence and penalty phases because . . . the cumulative effect of the errors in this case undermine confidence in the outcome at both phases of trial?

6. Was appellate counsel ineffective for failing to investigate and raise the above claims on direct appeal?

(Rivera's Brief at 1-2.)

[16] It is well settled that the PCRA's time requirements are jurisdictional in nature; therefore, we may address them *sua sponte*. *See*, *e.g.*, *Commonwealth v. Yarris*, 731 A.2d 581, 587 (Pa. 1999) ("Because the timeliness [of a PCRA petition] implicates our jurisdiction, we may consider the matter *sua sponte*."). Moreover, we have rejected the notion that this Court must defer to a PCRA court's conclusion that the newly discovered facts exception applies to claims in a petition where the parties agree on that point. *Commonwealth v. Reid*, 235 A.3d 1124, 1166 n.26 (Pa. 2020).

it had jurisdiction to consider the merits of all of the claims contained in Rivera's second PCRA petition because the parties agreed that the petition meets the newly discovered facts exception. The agreement of the parties, however, does not suffice to vest a court with jurisdiction; rather, a court must conduct an independent analysis of jurisdictional issues. *See*, *e.g.*, *Commonwealth v. Kennedy*, 876 A.2d 939, 943 (Pa. 2005) (explaining that, while parties agreed that order was appealable, such issues implicate this Court's jurisdiction, requiring Court to make independent determination concerning appealability of order); *see also Commonwealth v. Koehler*, 229 A.3d 915, 947 (Pa. 2020) (Dougherty, J., concurring and dissenting) (discussing PCRA's timeliness requirements and explaining that "jurisdiction of subject matter can never attach nor be acquired by consent or waiver of the parties" (quoting *McGinley v. Scott*, 164 A.2d 424, 428 (Pa. 1960))). We, therefore, vacate the PCRA court's order and remand the matter to the PCRA court to conduct an independent analysis of whether Rivera's current claims meet the requirements of a timeliness exception and Section 9545(b)(2).

In performing this analysis, the PCRA court must be mindful of, *inter alia*, what Section 9545(b)(1)(ii) of the PCRA requires. The litigation below focused upon the material or evidence that Rivera acquired during the federal discovery process, perhaps leading Rivera and the PCRA court to, at times, incorrectly refer to the newly discovered facts exception as the "newly discovered evidence exception." (*See*, *e.g.*, Rivera's Post-Hearing Memorandum, 10/11/2021 at 13 (describing Section 9545(b)(1)(ii) as "newly discovered evidence exception"); PCRA Court Opinion, 9/19/2022, at 17 (referring to Section 9545(b)(1)(ii) as "newly discovered evidence exception").) The plain language of Section 9545(b)(1)(ii), however, makes clear that a petitioner must plead and prove that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa. C.S.

§ 9545(b)(1)(ii) (emphasis added); *see Commonwealth v. Bennett*, 930 A.2d 1264, 1270-72 (Pa. 2007) (holding that Section 9545(b)(1)(ii) is not equivalent of after-discovered-evidence claim).[17] Thus, while recently discovered evidence may reveal new facts, or even itself establish a new fact in some situations,[18] whether a petitioner meets the requirements of the newly discovered facts exception ultimately turns on the petitioner's knowledge of previously unknown facts, not new evidence of a known fact, related to his claim.

Further, the newly discovered facts exception, as well as the requirements of Section 9545(b)(2) of the PCRA, are claim specific, not petition based. *See* 42 Pa. C.S. § 9545(b)(1)(ii) (providing that, to meet newly discovered facts exception, petitioner must plead and prove that "the facts upon which *the claim* is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence" (emphasis added)); *see Commonwealth v. Porter*, 35 A.3d 4, 13-14 (Pa. 2012) (describing Sections 9545(b)(1) and (2) of the PCRA as "claim specific, as they would have to be, given the [then-existing] sixty-day filing restriction, and the fact that the statute addresses 'exceptional' claims"). Thus, when, as here, a facially untimely PCRA petition presents various claims and invokes the newly discovered facts exception, a court can only consider the merits of the claims that meet the exception and Section 9545(b)(2)'s filing mandates. *See Commonwealth v. Tedford*, 228 A.3d 891, 904 (Pa. 2020) ("This

---

[17] This Court also has explained that the "focus of the exception is on [the] newly discovered facts, not on a newly discovered or newly willing source for previously known facts." *Commonwealth v. Marshall*, 947 A.2d 714, 720 (Pa. 2008) (alteration in original) (emphasis, citation and internal quotation marks omitted).

[18] *See Commonwealth v. Natividad*, 200 A.3d 11, 29 (Pa. 2019) (holding that "appellant satisfied an exception to the PCRA's time-bar with respect to this claim, as the facts upon which his *Brady* claim were predicated—that the Commonwealth withheld evidence pertaining to another suspect—were unknown to him until the Commonwealth was forced to open its files").

Court has consistently held that the PCRA's time restrictions are jurisdictional in nature and that a PCRA court must, before considering the merits of claims asserted in a PCRA petition, first make a threshold determination whether *each claim was timely filed*." (emphasis added)). In other words, if one of several claims in a PCRA petition meets this exception and Section 9545(b)(2), that does not mean that a PCRA court has jurisdiction to entertain the other claims raised in that petition. Rather, the court can consider the additional claims only if they meet the requisites of the exception and Section 9545(b)(2). On remand, the PCRA court must determine whether Rivera's claims meet the requirements of either the newly discovered facts exception or the governmental interference exception, as well as the mandates of Section 9545(b)(2) of the PCRA.[19]

For the reasons provided above, we vacate the PCRA court's order denying Rivera's second PCRA petition. We remand the matter and direct the PCRA court to conduct an independent analysis of whether it has jurisdiction to consider any of Rivera's claims. Jurisdiction relinquished.

Chief Justice Todd and Justices Donohue, Dougherty, Wecht, Mundy, and McCaffery join the opinion.

---

[19] The governmental interference exception also is claim specific. *See* 42 Pa. C.S. § 9545(b)(1)(i) (explaining that, to meet governmental interference exception, petitioner must plead and prove that "the failure to raise *the claim* previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States" (emphasis added)); *Porter*, 35 A.3d at 13-14.